STATE, Respondent, v. O'BRIEN, Appellant.

*No. State 188 (1974).  Argued October 2, 1975.—Decided October 30, 1975.*
(Also reported in 234 N. W. 2d 362.)

For the appellant there was a brief by *Frederick H. Miller* and *Miller, Rothstein & Mussallem,* all of Madison, a reply brief by *Frederick H. Miller* and *Miller & Mussallem,* all of Madison, and oral argument by *Frederick H. Miller.*

For the respondent the cause was argued by *Thomas J. Balistreri,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

ROBERT W. HANSEN, J. The evidence challenged was secured under a search warrant issued on the basis of (1) observation by the police officers of a scale and marijuana on a kitchen table; (2) observation by the officers of marijuana on a dining room table; and (3) observation by the officers of large, green plastic bags, believed by them to contain marijuana, on the third floor of the farmhouse where the officers went to serve an arrest warrant.

No challenge is made to the right of the police officers to enter the kitchen to execute the arrest warrant.

No challenge is made to the right of the police officers to be in the kitchen when they observed, in plain view, the scale and marijuana on the kitchen table.

No challenge is made to the right of the police officers to be in the dining room where they observed, in plain view, the marijuana on the dining room table.

No challenge is made to the right of the police officers to be on the second floor of the farmhouse where they located and placed under arrest the person named in the arrest warrant.

No challenge is made to the right of the police officers to be on either the first or second floor of the farmhouse or to their right to see what was in plain view on such floors.

Rather the sole challenge is to the right of the police officers to be on the third floor and to their right to see even what was in plain view on such third floor.[1]

However, a tri-level approach to the single challenge made is to be maintained because the reasons for the officers being on the third floor relate to and derive from what they saw or were told on the two lower floors.[2]

On the first floor, in the kitchen and dining room, where they had an unchallenged right to be, the police officers observed, in plain view, the scale and marijuana on the kitchen table and the marijuana on the dining room table. No search or searching was involved.[3]

Their identification of the greenish vegetable matter on the two tables, based on their experience as narcotics officers, made subject to seizure the contraband they recognized.[4] No search warrant was required for such

[1] In its decision denying defendant's motion to suppress, the trial court found: "In the course of examination of the third floor for persons who might be there, there was discovered some bags which appeared to contain marijuana in rather large quantity. These bags were not secreted but were apparent to anyone looking in their direction."

[2] See: Day v. State (1973), 61 Wis. 2d 236, 248, 212 N. W. 2d 489, certiorari denied (1974), 417 U. S. 914, 94 Sup. Ct. 2614, 41 L. Ed. 2d 218, this court stating: "If the police have a prior justification to be present in a position to view an object in plain view and if their discovery of that object is inadvertent, then the object may be seized." (Citing Coolidge v. New Hampshire (1971), 403 U. S. 443, 91 Sup. Ct. 2022, 29 L. Ed. 2d 564.)

[3] Id. at page 248, this court holding: ". . . [W]hile the plain view doctrine is deemed an exception to the warrant requirement, it cannot constitutionally be deemed a search. ' "A search implies a prying into hidden places for that which is concealed." It is not a search to observe what is in plain view.' " (Quoting Edwards v. State (1968), 38 Wis. 2d 332, 338, 156 N. W. 2d 397.)

[4] See: State v. Elam (1975), 68 Wis. 2d 614, 621, 622, 229 N. W. 2d 664, this court holding: "Therefore, three prerequisites must be met [for warrantless search and seizure under the plain-view doctrine]. The police must have a prior justification

seizure, the evidence being in plain view of law officers when they stood where they had the right to stand and their discovery of it clearly inadvertent.[5]

Such right to seize or possess the contraband did not in any way identify which of the persons in the farmhouse was the possessor. Reasonable police procedures in the investigating of criminal activity then required the police officer to interrogate the persons present to determine who was the possessor of the contraband. Such entirely reasonable investigatory mandate required locating all persons present—on all three levels of the farmhouse.[6]

Additionally, police observation of both the measuring scale and a quantity of marijuana on the kitchen table made entirely reasonable, under any reasonable man test,

for the intrusion which placed them in the position to observe the evidence in plain view, the evidence must be in plain view, and the discovery of the evidence must be inadvertent."

[5] See: United States v. Cushnie (5th Cir. 1973), 488 Fed. 2d 81, 82, certiorari denied (1974), 419 U. S. 968, 95 Sup. Ct. 233, 42 L. Ed. 2d 184, the court holding: "It might be argued here that, by the very nature of the suspected. crimes, the narcotics agents expected to locate marijuana in the room, and that this expectation destroyed the necessary inadvertence. However, where, as in this case, the original entry is clearly for the purpose of making an arrest, the need for immediate apprehension makes application for an accompanying warrant impractical, and the item seized is easily destroyed contraband, the expectation that such evidence will be discovered does not preclude operation of the plain view exception to the warrant requirement."

[6] As to right of police to interrogate and detain for interrogation, see State v. Chambers (1972), 55 Wis. 2d 289, 294, 198 N. W. 2d 377, holding: "Even though there is no probable cause to make an arrest, Adams makes clear that a police officer may 'in appropriate circumstances' detain a person for interrogation." (Citing Adams v. Williams (1972), 407 U. S. 143, 145, 146, 92 Sup. Ct. 1921, 32 L. Ed. 2d 612, the court there holding: "The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape.")

a suspicion that the marijuana measured or the larger quantity of marijuana from which that measured had been taken was nearby. This is analogous to finding the bullets, and suspecting that a gun they fitted was nearby.[7]

If a bullet-ridden corpse had been found on the kitchen floor, the police officers would have been entitled to determine who was present on all three floors of the farmhouse to interrogate each such person as to what they had done or had observed in relation to the departure of the deceased. Finding the scale and marijuana warranted identical investigation and interrogation of all persons present in the farmhouse as to the crime of possession of a controlled substance.

Thus we need not deal here with the permissible limits of a search incidental to the execution of an arrest warrant.[8] We deal rather with the reasonable and required

[7] See: State v. Williamson (1973), 58 Wis. 2d 514, 521, 206 N. W. 2d 613, this court holding: ". . . [E]ven if consent had not been given, it is clear here that it was reasonable under these circumstances for the police to look for the gun in the car after they had found the bullets in defendant's pocket. Finding the bullets made it not unreasonable to believe and to fear that the gun they fitted was nearby." See also: Kendrick v. Nelson (9th Cir. 1971), 448 Fed. 2d 25, holding that, where police stopped defendant for a minor traffic violation and found a cartridge clip, probable cause existed to believe that the occupants of the car might have a dangerous weapon.

[8] See: Chimel v. California (1969), 395 U. S. 752, 763, 89 Sup. Ct. 2034, 23 L. Ed. 2d 685, as to searches incident to arrest, holding: "There is no comparable justification, however, for routinely searching any room other than that in which an arrest occurs—or, for that matter, for searching through all the desk drawers or other closed or concealed areas in that room itself. Such searches, in the absence of well-recognized exceptions, may be made only under the authority of a search warrant." See also: United States v. Gamble (7th Cir. 1973), 473 Fed. 2d 1274; United States v. Cooks (7th Cir. 1974), 493 Fed. 2d 668, certiorari denied (1975), 420 U. S. 996, 95 Sup. Ct. 1437, 43 L. Ed. 2d 679.

police investigation as to the ownership of contraband found in a kitchen and dining room.

It is correct to say that the police officers went to the second floor, as directed by the person sitting at the dining room table, to serve the arrest warrant on the person named. That was entirely proper, but their going to such second floor was also entirely proper for the purpose of asking the persons there about the contraband found on the first floor.

Similarly, when the officers were told by the two persons on the second floor that there were two more persons on the third floor, they were entitled to go to such third floor to interrogate the persons there as to ownership of the contraband found on the first floor. They did not have to accept the head count given by the sleepers on the second floor.[9] Their right or duty extended to interrogating all persons in fact present in the farmhouse as to the contraband found in the kitchen and dining room.

It is true that the trial court held that the police officers were justified, under the circumstances here, in going to the third floor to locate persons there in order to make sure that there was no one there who could present a danger to them.[10] Such investigation to secure the

---

[9] *See: Hawkins v. United States* (D. C. App. 1974), 319 Atl. 2d 328, 329, certiorari denied (1974), 419 U. S. 969, 95 Sup. Ct. 233, 42 L. Ed. 2d 185, the court holding: "Appellant's argument is that the police were bound to abandon their immediate intent to look for their subject at his residence, to accept as true the statement that he was at school, and to look for him there. No such requirement exists under these circumstances where it was reasonable to believe him to be at home. . . . It was not unreasonable for the police to press the immediate search because appellant's statement may have been an effort to divert the search and facilitate escape or concealment."

[10] In its opinion, denying defendant's motion to suppress, the trial court concluded: "We think it is unreasonable to expect police officers to enter a house to make an arrest of an alleged

premises to insure that persons, presenting a danger to arresting officers, were located, was, under the circumstances here, justifiable.[11] Police do have a right to protect themselves, and determining if there are other persons on the premises who present a security risk is under certain circumstances a proper precaution.[12]

However, we place primary reliance upon the right of these police officers to go to the third floor as a proper investigatory procedure to locate for the purpose of interrogating all persons present on the premises as to ownership of the contraband earlier found on such premises. A corollary right to secure the premises to protect themselves supports but does not shift such primary reliance.

---

drug peddler, the house being occupied by several persons, the exact number not being known, without a rather thorough search of the house for its inhabitants to secure them while the arrest is being made where the person arrested is on the second floor of the house and there are also persons on the first and third floors. It is reasonable for the officers to conduct a search for persons in the house."

[11] *See: Guidi v. Superior Court* (1973), 10 Cal. 3d 1, 8, 9, 109 Cal. Rptr. 684, 513 Pac. 2d 908, 913, the court, reading together *Chimel v. California, supra,* footnote 8, and *Terry v. Ohio* (1968), 392 U. S. 1, 88 Sup. Ct. 1868, 20 L. Ed. 2d 889, concluded: ". . . while *Chimel* limited exploratory searches for evidence incident to arrest, *Terry* independently authorized cursory searches for additional suspects incident to arrest or at any other time the police have reasonable grounds for fearing for their security in the discharge of their duties." The court, in assessing the reasonableness of a search for additional suspects, made the test: " 'whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place.' " (Quoting *Terry v. Ohio, supra,* at page 20.)

[12] *See: State v. Elam, supra,* footnote 4, at page 624, where police, serving an arrest warrant for trafficking in drugs, found defendant armed and secreted in a closet, and this court upheld the trial court finding that ". . . the investigation of the apart-

The sole challenge in this case is to the right of the officers to go to the third floor to determine who was there present. No claim is made that, if the officers had the right to go and be there, that the green plastic bags and big burlap bag were not in their plain view. If the officers had the right to look in storage area or closet to determine who was there, they would not miss seeing, in plain view, the plastic and burlap bags.

We hold, under these circumstances, that the police officers had the right to be on the third floor for the purpose of determining who was there present, and had the right to observe what was then in plain view. So holding requires affirmance of the trial court's denial of defendant's motion to suppress.

It must be noted that the search warrant here was not issued solely on the basis of the third-floor observations of the police officers. The complaint, on the basis of which the search warrant was issued, set forth also the first-floor observations of the officer as to the scale and marijuana on the kitchen table and the marijuana on the dining room table. What was observed on the first floor, here unchallenged, was sufficient probable cause for the issuance of the search warrant. The also-mentioned observation, as to observing unopened bags on the third floor, added nothing that was required for the issuance of the search warrant.

The court independently can determine that the first-floor observations alone were sufficient to support a finding of probable cause to issue the search warrant for a search of the entire farmhouse.[13] We do so deter-

---

ment after the arrest and removal of the defendant was motivated by the desire to insure that no one else was hiding."

[13] See: Wold v. State (1973), 57 Wis. 2d 344, 356, 204 N. W. 2d 482, dealing with erroneous admission of a second laboratory test, this court holding: "The test of harmless error is not whether some harm has resulted, but, rather, whether the appellate court in its independent determination can conclude there is sufficient

mine and hold here. Even if we were to hold, as we do not, that the officers had no right to be on the third floor, we would not hold invalid the issuance of a search warrant. Even an unwarranted going to the third floor would not here affect the lawfulness of seeking and securing a search warrant on the basis of what the officers earlier observed, and were entitled to observe, in the kitchen and dining room.[14]

In conclusion, using the tri-focal glasses to keep in view the sequence of events from kitchen door to third floor, we hold that the seizure of evidence under the authority of the search warrant here issued was entirely proper.

*By the Court.*—Judgment affirmed.

---

evidence, other than and uninfluenced by the inadmissible evidence, which would convict the defendant beyond a reasonable doubt." (Emphasis supplied.) (Citing *Harrington v. California* (1969), 395 U. S. 250, 89 Sup. Ct. 1726, 23 L. Ed. 2d 284.)

[14] *See: United States v. Artieri* (2d Cir. 1974), 491 Fed. 2d 440, 446, certiorari denied (1974), 419 U. S. 878, 95 Sup. Ct. 142, 42 L. Ed. 2d 118, dealing with validity of a search warrant based on lawful search prior to an illegal activity. *See also: United States v. Valen* (3d Cir. 1973), 479 Fed. 2d 467, 470, certiorari denied (1974), 419 U. S. 901, 95 Sup. Ct. 185, 42 L. Ed. 2d 147.