THE STATE OF OHIO, APPELLANT, *v.* MANDICH, APPELLEE.

[Cite as State v. Mandich (1977), 51 Ohio App. 2d 204.]

(Nos. C-76170 and C-76171—Decided April 20, 1977.)

*Mr. Simon L. Leis, Jr.,* prosecuting attorney, *Mr. William E. Breyer* and *Mr. Claud N. Crowe,* for appellant.
*Mr. Bernard J. Gilday, Jr.,* for appellee.

*Per Curiam.* These causes came on to be heard upon the appeals; the transcript of the docket, journal entries and original papers from the Court of Common Pleas of Hamilton County; the transcript of the proceedings; and the assignment of error, the briefs and the arguments of counsel.

These cases represent Crim. R. 12(J) appeals by the state of Ohio from the granting of a motion to suppress evidence in a trial of the defendant on a charge of the possession of criminal tools, prohibited by R. C. 2923.24. Case C-76170 represents a purported direct appeal and Case C-76171 is before us pursuant to our granting of a motion for leave to appeal filed by the state, the two otherwise identical appeals being consolidated for purposes of argument and disposition herein. Preliminarily, we note the substantive deficiency in C-76170, the attempted direct appeal, and *sua sponte* dismiss the same on authority of *State* v. *Waller* (1976), 47 Ohio St. 2d 52. However, since the same issues are before use in C-76171, no impediment to the full resolution of the questions raised by the state is presented by such dismissal.

Proceeding next to the merits of the appeal by leave, the state presents a single assignment of error for review: that the trial court erred in granting the defendant's motion to suppress. A review of the record received during the hearing on the motion to suppress reveals that two officers of the Cincinnati Police Department, while on routine patrol during the early morning hours of October 15, 1975, observed a 1973 white Thunderbird automobile traveling at an excessive rate of speed. After clocking the automobile for one-tenth of a mile at 44 m.p.h. in a 25 m.p.h. zone, the officers stopped the speeding car with the intention of citing its operator for a speeding offense. After requesting the driver to exit from the car and noting his nervousness, one of the two officers recognized the oper-

ator as the defendant, a man whom he had a year earlier arrested for possession of burglar tools.

As the defendant stood next to his car, one of the officers noticed a bulge in the left trouser pocket of his "snug" clothing, which resembled a knife or weapon to the officer, and which occasioned some apprehension on the part of the officer, who then patted the defendant down. The officer testified:

"When I patted him down, I could feel the sharp end of this, and that's when I reached into his pocket and took it out."

Upon removing the object, the officers found, instead of a knife, a tool which one of them recognized as a home-made device utilizing adjustable bent bobby pins in slots along a metal shaft designed to be used as a lock pick on coin operated machines. The defendant was thereupon placed under arrest for the possession of criminal tools, and a further search of his person was made. In addition, an inventory search of the automobile interior was made before the officers released the Thunderbird for towing to an impoundment area and, later, another search of the locked trunk was made, allegedly with the defendant's consent. Various incriminatory items of evidence were discovered and seized in these subsequent searches, all of which, together with the tool first recovered from defendant's pocket, were sought to be suppressed under the defendant's motion.

After hearing the above evidence,[1] the court granted the motion to suppress, stating its reason for the ruling, as follows:

"I don't think that factually there is any question that this was a proper action on the part of the police officers initially when they were stopping this defendant for violation of a traffic offense * * * I think also that at that time both officers had a right to conduct a personal search

---

[1]The defendant did not testify nor call any witnesses at the instant hearing. The sole testimony before the trial court was that offered by the two arresting officers.

of the defendant * * * upon the theory that it is important to law enforcement that the individual police officer's safety be protected. For that reason, even without a physical arrest, he is entitled to conduct such a search as will settle that question in his mind. Now, that is exactly what the police officer in this case did. When they did conduct that search and they found that there was no dangerous instrument, their safety was not jeopardized and they weren't in peril.

"That is the end of the search. You can't go on from there, just because you find something else that predicated what your future conduct is."

Having thus found that the initial search and seizure of the tool to have been an unreasonable intrusion into the defendant's Fourth Amendment rights, the trial court concluded that the balance of the evidence seized in subsequent searches automatically fell as fruit of the poisonous tree, without the necessity of an individual examination into the propriety or reasonableness of these later searches and seizures. The question here is therefore limited to the area ruled upon by the trial court—the correctness of the court's dispositive ruling on the admissibility of the initial search and seizure of the lock-pick tool.

As to that issue, it is apparent that while the trial court believed the initial search to have been reasonable under the doctrine of *Terry* v. *Ohio* (1968), 392 U. S. 1, he concluded that the seizure of a non-weapon discovered during the course of the "pat-down" search was unreasonable. We disagree. The correct rule, which we believe to be sustained by both reason and authority, is that where a search is consistent in its inception with the dictates of the Fourth Amendment, a law enforcement officer may seize any contraband unearthed in the course of such a lawful search. *United States* v. *Bell* (E. D. N. Y. 1971), 335 F. Supp. 797, 804. Here, the uncontradicted testimony of the police officer placed the initial pat-down search indisputably within the scope of *Terry, supra.* During the course of the pat-down, the officer felt the presence of a sharp knife-like object in the defendant's pocket, and removed

it, as he had both the right and duty to do. Having so removed and examined it, he was under no duty we can discover to ignore the evidence provided by his senses that the article was contraband, and thence to return it to the defendant's pocket. *Harris* v. *United States* (1947), 331 U. S. 145, overruled on other grounds; *Chimel* v. *California* (1969), 395 U. S. 752. On the contrary, having first lawfully uncovered the contraband pursuant to a reasonable search, the articles could properly be seized and subsequently used in evidence against the subject without doing violence to his Fourth Amendment rights. *United States* v. *Moreno* (C. A. 5, 1973), 475 F. 2d 44, *certiorari denied*, 414 U. S. 840; *United States* v. *Bell*, *supra*, *certorari denied*, 409 U. S. 991; *United States* v. *Lindsey* (C. A. 3, 1971), 451 F. 2d 701, *certiorari denied*, 405 U. S. 995. The officers were under no compulsion to ignore one form of contraband merely because they expected to find another. *United States* v. *Bell*, *supra*, at 804.

It follows that the trial court erred in granting the defendant's motion to suppress evidence of the lock-pick tool removed from the defendant's pocket, and in suppressing, as fruit of the poisonous tree, the balance of the articles seized.[2] Appellant's assignment of error is, therefore, well taken.

The judgment of the trial court is reversed, and the cause is remanded for further proceedings in accordance with law.

*Judgment reversed and cause remanded.*

Shannon, P. J., Palmer and Black, JJ., concur.

---

[2] This appeal did not raise and the court does not here decide any issue of search and seizure other than that passed upon by the trial court; *viz.*, the search and seizure of the pick-lock tool from the defendant's pocket, and the consequent inapplicability of *Silverthorne Lumber Co.* v. *United States* (1920), 251 U. S. 385, to work a suppression of evidence derivatively seized. *State* v. *Day*, unreported, No. C-76480, First District Court of Appeals, decided December 20, 1976, n. 2.