THE STATE OF OHIO, APPELLEE, *v.* GLOVER, APPELLANT.

[Cite as State v. Glover (1978), 60 Ohio App. 2d 283.]

(No. C-77772—Decided September 27, 1978.)

*Mr. Simon L. Leis, Jr.,* and *Mr. Thomas P. Longano,* for appellee.

*Mr. Michael Shannon Duty,* for appellant.

*Per Curiam.* This cause came on to be heard upon the appeal, the transcript of the docket, journal entries and original papers from the Court of Common Pleas of Hamilton County, Ohio, the transcript of the proceedings, the assignment of error, the briefs and the arguments of counsel.

On March 4, 1977, police officers of the Springdale and Glendale departments went to the home of the appellant for the purpose of investigating a woman who had been seen entering an automobile bearing license plates registered to appellant, the woman being suspected of theft of a green suede coat from a local store. Appellant answered the police officers' knock on his door, and they informed him that they were investigating a theft which had occurred at a local store. They described the merchandise involved, and the police officers saw the woman suspected of the theft standing just inside the door behind the appellant. The police officers asked appellant if they could enter his home and search for the coat which had been taken, and appellant gave them permission to "look around all you want."

As an officer entered the bedroom of the residence he noticed upon a night stand, in plain view, a "pot pipe," a set of scales, a set of measuring devices, and marijuana. He also observed straining instruments and spoons, and two glass vials. It was determined that the two glass vials on the table contained cocaine. The officer, upon sighting this equipment and the contraband, asked the appellant, indicating the marijuana seen on the table, if he had any more. The appellant stated, "Yes, in the cupboard." The officer approached the cupboard, the door being open and inside a box, in the cupboard on a shelf, found some fifteen "baggies" of marijuana.

The green suede coat, which had been stolen, was discovered on the floor of a closet. Thereafter, the officers searched the pockets of a black leather jacket lying on the bed. It was in the pockets of the jacket that heroin was found. While inspecting the closet the officers, among other things, noted or copied down the serial number of a Pentax camera. At that point in time the officers were not aware that the camera had been stolen, but after returning to the police sta-

tion, they determined that the camera had been stolen.

The appellant was indicted by the Hamilton County Grand Jury and charged with three separate counts: (1) possessing a Schedule 1, Controlled Substance, heroin; (2) receiving stolen property, the Pentax camera; and, (3) possessing cocaine. A motion to suppress was filed and heard by the trial court. At the conclusion of the evidence presented, the court overruled the motion to suppress the items which were the subject of the three counts, and, thereafter, the defendant entered a plea of no contest. The court found the appellant guilty on all counts and as to each count sentenced him to the Ohio Reformatory for a period of not less than six months nor more than five years, the penalties to be served concurrently. Sentence was then suspended and appellant placed on probation for three years. The appellant, in a timely fashion, has brought his appeal to this court.

Appellant assigns as error the trial court's overruling of the motion to suppress. We will discuss each of the three items which were the subject of the motion. We begin our examination of this case by noting the basic premise that the guarantees provided by the Fourth Amendment are jealously guarded and, under our law, warrantless searches are *per se* unreasonable, in the absence of exigent or other extenuating circumstances where exceptions have been carved from the basic rule. The plain view doctrine is one of the recognized exceptions. It applies whether the initial intrusion by the police which brings the object or objects in view is supported by a warrant or by an exception to the warrant requirement. Thus, where a police officer has the legal right to be in a position where evidence comes into plain view, and, although he may not be searching for such evidence, he inadvertently encounters it and recognizes its nature as contraband, he may seize the evidence. The first premise, of course, is that a search is underway by reason of a warrant or one of the exceptions recognized under the law. The discovery of the evidence in plain view must be inadvertent and its nature as contraband must be recognizable in order to justify a warrantless seizure.

With these principles in mind, we apply the teachings of *Harris* v. *United States* (1968), 390 U. S. 234; *Ker* v. *Califor-*

*nia* (1963), 374 U. S. 23, and *Coolidge* v. *New Hampshire* (1971), 403 U. S. 443. This court has followed the mandates of those decisions in the recent case of *State* v. *Mandich* (1977), 51 Ohio App. 2d 204. We said in that case, at page 207:

"The correct rule, which we believe to be sustained by both reason and authority, is that where a search is consistent in the inception with the dictates of the Fourth Amendment, a law enforcement officer may seize any contraband unearthed in the course of such a lawful search."

Coming then to the items seized, we have no difficulty in finding first that the officers were, by permission of the appellant, in his home and that they were given permission to conduct a search for suspected stolen property. Also, the several items which were in plain view on the bedroom table certainly would alert any sensible law enforcement officer to the possibility of contraband being on the premises. In fact, the cocaine which relates to the third count of the indictment was in two glass vials in plain view. Its seizure can in no way run afoul of the requirements as set out above.

On the other hand, the heroin which was the subject of the first count of the indictment was found in the pocket of a leather jacket lying on a bed, and this event, the record indicates, occurred some fifteen minutes after the contraband which was the initial subject of the search, *i.e.*, the green suede coat, had been discovered. The jacket was in no way connected with the closet nor is there any indication that appellant's permission to conduct the search included a general exploratory search of all that was in sight. We held in *State* v. *Strayhorn,* unreported, First Appellate District No. C-77371, decided April 12, 1978, that where a police officer, properly on the premises, inspected a pouch or envelope which fell from the purse of one of the occupants of the property, he had conducted an impermissible search. Thus, we hold here that the officers went beyond the authority either given or implied by application of the plain view doctrine. As a consequence, the trial court erred in overruling that part of appellant's motion to suppress which dealt with the heroin.

We come then to the consideration of the Pentax camera which was the subject of Count Two of the indictment. Counsel for appellant vigorously argued the precepts and

holding in *United States* v. *Gray* (C.A. 6, 1973), 484 F. 2d 352. We would first make the observation that, although we hold the United Statis Sixth Circuit Court of Appeals in high regard and we find their decisions to be most persuasive, we are not bound to follow the holdings that they articulate. See 20 American Jurisprudence 2d 556, Courts, Section 225. With the case before us, we frankly concede that the facts in *Gray* and in the case at bar, up to a point, cannot be distinguished. The Sixth Circuit held in that case that law enforcement officers who had lawfully intruded on the premises of the defendant by virtue of a search warrant exceeded the authority of the warrant when they copied the serial numbers from two guns which were found in a closet and which a later investigation revealed to be contraband, *i.e.,* stolen weapons. The court held that the evidence should have been suppressed by the trial court because there was a constructive seizure outside of the lawful limits of the search warrant when the officer copied the serial numbers of the guns involved.

Up to that point, there is great similarity between *Gray, supra,* and the case at bar. We find, however, the facts in this case to go well beyond the facts in *Gray*. The record before us supports the state's contention that the officers were lawfully in the place where they observed certain contraband in plain view. The nature of the contraband as such must have surely suggested to prudent police officers the probability that the existence of scales, measuring devices, straining spoons, etc., were not the instruments used by a consumer of the hallucinogen or drug but were rather the tools of one engaged in trafficking in this illicit contraband. The officer's view in the closet was permitted by the appellant and the copying down of the camera's serial number on the shelf in the closet was, in our opinion, good police practice. It is well known that one who traffics in illicit drugs is often the recipient of stolen goods by the barter system.

Measured against the minor peril to Fourth Amendment protections, there seems to us to be a major gain in effective law enforcement action where officers, under facts such as those before us, copy serial numbers of articles which are readily traceable. It is noted here that the officers did not seize the camera until they had ascertained that it was, in fact, stolen property and then the seizure was accomplished

with the appropriate warrant. Under the facts in the case before us, if the officers had copied down the vehicle identification number of a motor vehicle found in the garage of the premises, assuming they were permitted to inspect the garage, it would seem to us to be ludicrous to hold that later investigation revealing that the motor vehicle was stolen would not have permitted the return with a warrant for its seizure.

As we compare the totality of the circumstances presented to us in the case at bar, as contrasted to the facts in *Gray, supra,* we must respectfully decline to follow the holding in that case. We cannot, therefore, accept the view of our learned brothers of the United States Sixth Circuit Court of Appeals in *Gray, supra,* where they hold that the mere copying of identification numbers is tantamount to constructive seizure. We hold, therefore, that the court did not err in overruling appellant's motion to suppress the Pentax camera.

Even though we have said that, in our opinion, the court erred in overruling the motion to suppress the heroin, we find this to be harmless error in light of the penalty imposed by the court. The sentences were identical as to each count and were to be served concurrently had not probation been granted. We, therefore, see no error prejudicial to the rights of the appellant. Nor has the appellant in anyway demonstrated that the trial court's action as to the overruling of the motion relating to heroin prejudiced him in view of the nature of the penalty ultimately imposed. For the reasons already set forth, we affirm the decision of the trial court.

*Judgment affirmed.*

PALMER, P. J., SHANNON and CASTLE, J J., concur.