STATE of Wisconsin, Plaintiff-Appellant,

v.

Kevin R. NOLL, Defendant-Respondent.†

Court of Appeals

*No. 82–562–CR. Submitted on briefs September 20, 1982.—
Decided February 8, 1983.*
(Also reported in 331 N.W.2d 599.)

† Petition to review granted.

For the appellant the cause was submitted on the briefs of *Bronson C. La Follette,* attorney general, and *David J. Becker,* assistant attorney general.

For the respondent the cause was submitted on the brief of *Rusch & Rusch Law Office* and *Robert P. Rusch,* of Medford.

Before Foley, P.J., Dean and Cane, JJ.

FOLEY, P.J. The state appeals an order suppressing evidence and statements obtained by law enforcement officers as a result of a search of Kevin Noll's home pursuant to a defective search warrant. The warrant was defective because some of the stolen property it authorized the officers to search for was insufficiently described. Because we conclude that the defect in the warrant did not invalidate the entire warrant, we reverse the order and remand this matter to the trial court with directions to admit the evidence and statements obtained as a result of the valid portion of the warrant.[1]

---

[1] Our reversal of the suppression order should not be construed as an approval of the issuance of the patently defective warrant in this case or of the deputies' general rummaging about Noll's house.

■

The defective search warrant authorized the search of Noll's home and premises for "a set of antique ceramic book-ends in the shape of horses and advertising Rolling Rock Beer; various long play phonograph record albums, and miscellaneous vases and glassware items, all of which were removed from an auction at the Milo M. Webb residence in Stanley, Wisconsin on October 25, 1981 without having been paid for . . . ." With the exception of the horse-shaped bookends, the warrant does not sufficiently describe the remaining stolen property. *See State v. Starke,* 81 Wis. 2d 399, 412, 260 N.W.2d 739, 746–47 (1978).

When the deputy sheriffs assigned to execute the warrant went to Noll's home to conduct the search, Noll admitted them to his kitchen where one of them saw a black and white television. Although Noll cooperated with the deputies by collecting and turning over the items of property he had stolen from the auction, the deputies continued their search of Noll's home.[2]

Before leaving Noll's home, one of the deputies recorded the serial number of the kitchen television, which matched the description of a reported stolen television. With this serial number, the deputy determined that the television, along with other items, had been stolen from the James and Darlene Reinke residence. The deputies had seen some of these stolen items during their search of Noll's home. With this information, the deputies obtained a second warrant to search Noll's property. As a result of the second search, the deputies seized some of the items taken in the Reinke burglary.

Noll argues that all the evidence obtained in the first search should have been suppressed because the first

---

[2] For purposes of the opinion, we have assumed that any evidence resulting from this extended search was improperly obtained.

warrant was defective. He also argues that the evidence illegally obtained in the first search should not have been used to obtain the second warrant. The trial court agreed and suppressed all the evidence obtained in both searches.

We do not agree with the trial court's conclusion. Although some courts have held that a defect in a portion of a search warrant invalidates the entire warrant,[3] other courts have rejected this inflexible approach.[4] We also reject it because a blind application of the suppression rule would on occasion impose an unnecessary penalty on law enforcement officers and on society.

The intended goal of the suppression rule is to deter police violation of fourth amendment rights. This goal is achieved by prohibiting police exploitation of their violations. *State v. Kraimer*, 91 Wis. 2d 418, 431, 283 N.W.2d 438, 444 (Ct. App. 1979). Suppression, however, will frequently preclude conviction of criminals and permit their continued freedom to commit further crime. Because the conviction of criminals and public safety are also important societal goals, courts should not impose the severe penalty of suppression when it would serve no purpose and is not mandated by controlling precedent. Courts should have the discretion to maintain a proper

---

[3] *See, e.g., United States v. Enger*, 472 F. Supp. 490, 520–21 (D. N.J. 1978) (where the warrants authorized the seizure of "espionage paraphernalia"); *In re Lafayette Academy, Inc.*, 462 F. Supp. 767, 772 (D. R.I. 1978) (where the warrant authorized the seizure of any piece of paper in the suspect's possession and also had no time limitation); *United States v. Burch*, 432 F. Supp. 961, 963–64 (D. Del. 1977) (where the court held that the warrant was general where it was not limited to a search for evidence or fruits of any particular crime or crimes).

[4] *See United States v. Christine*, 687 F.2d 749, 754 (3d Cir. 1982); *United States v. Giresi*, 488 F. Supp. 445, 459–60 (D. N.J. 1980); *Aday v. Superior Court*, 362 P.2d 47, 52 (Cal. 1961); *Walthall v. State*, 594 S.W.2d 74, 79 (Tex. Crim. App. 1980).

balance between their obligations to protect fourth amendment rights and the public's safety. In balancing these competing interests to determine whether suppression is appropriate, courts should consider both police conduct and the effect of that conduct on the individual who seeks suppression.

In this case, neither the deputies' conduct nor its effect on Noll's fourth amendment rights require a remedial suppression of the evidence obtained pursuant to the valid portion of the first warrant. The deputies followed a proper constitutional course and obtained a search warrant based on probable cause. It is as important to the administration of justice to encourage the good police practice of obtaining a warrant as it is to invalidate convictions because of police disregard for individual rights or official overreaching. *See United States v. Ventresca,* 380 U.S. 102, 111–12 (1965).

Additionally, the evidence that we refuse to suppress was not secured as a result of any real violation of Noll's rights.[5] The defect in the warrant did not expand the permitted search area, and the deputies were not searching for any property that they did not have probable cause to search for. *See United States v. Giresi,* 488 F. Supp. 445, 461 (D. N.J. 1980). The valid portion of the warrant permitted the deputies to search the entire premises for the bookends, and there was probable cause to allow a search for the balance of the listed property. All that was necessary to make the entire warrant valid was a particular description of the balance of the prop-

---

[5] Like the materials or information improperly obtained from the files in *State v. Starke,* 81 Wis. 2d 399, 260 N.W.2d 739 (1978), any evidence improperly obtained after the police recovered the bookends would be subject to suppression. The otherwise overbroad language in the warrant was therefore of no legal consequence to Noll.

erty. This information was available.[6] The problem, therefore, was the wording of the warrant, which was improvidently issued. This was not the deputies' fault. ██

Because the valid portion of the first search warrant authorized the deputies to search Noll's entire home for the bookends, they had the right to be in Noll's kitchen where one of them saw the stolen television. Because this observation of the television was proper, it could be used as the basis for the second warrant. The deputy's additional observation of the television serial number was simply good police practice, and it constituted neither a search nor a seizure of the television. *See United States v. Gunn,* 428 F.2d 1057, 1060 (5th Cir. 1970) ; *United States v. Catanzaro,* 282 F. Supp. 68, 69–70 (S.D. N.Y. 1968) ; *State v. Glover,* 396 N.E.2d 1064, 1068 (Ohio Ct. App. 1978).[7] The deputy did not damage the television by looking at it, and the observation did not require any rummaging through or close scrutiny of Noll's personal effects. The deputies did not attempt to seize the television until they determined that it was stolen. *See Glover,* 396 N.E.2d at 1068.

It also does not matter when the deputy observed the serial number. The deputy had the right to look at the

---

[6] The deputies had probable cause to believe Noll had stolen the bookends, vases, glassware, and albums and that these items were on the Noll premises. Noll bid on them at the auction and, after discovering that Noll had taken the items without payment, the auction clerk and another individual went to Noll's house where they saw some of the items.

[7] The police in *State v. Glover,* 396 N.E.2d 1064 (Ohio Ct. App. 1978), copied down the serial number of a camera they did not know was stolen after they saw evidence suggesting that a suspect was trafficking in illicit drugs. The court noted that one who traffics in illicit drugs is often the recipient of stolen goods and that copying down the serial number was good police practice. *Id.* at 1067–68. It is just as reasonable to assume that one who has stolen property may possess other stolen property.

serial number when he looked at the television. If he had the right to look at the television when he entered the kitchen, he also had the right to look at it later. *See United States v. Edwards,* 415 U.S. 800, 803–04 (1974); *La Fournier v. State,* 91 Wis. 2d 61, 69–70, 280 N.W.2d 746, 750–51 (1979).

The television serial number provided adequate support for the second search warrant. The mere fact that the second warrant was additionally supported by illegally obtained evidence is immaterial. *See State v. O'Brien,* 70 Wis. 2d 414, 424, 234 N.W.2d 362, 367 (1975). When the deputies connected the television to the Reinke burglary, the court properly allowed a search for all items taken in that burglary.

Noll's statements admitting involvement in the Reinke burglary are consequently also admissible. Noll made his statements after his arrest for the Reinke burglary. His arrest was based on information obtained during the searches of his home. The legal portion of the searches provided sufficient justification for his arrest.

*By the Court.*—Order reversed and cause remanded with directions.