OPINION *Page 2 
{¶ 1} Defendant-appellant David Giamarco appeals from his conviction and sentence from the Muskingum County Court of Common Pleas. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On July 13, 2005, the Muskingum County Grand Jury indicted appellant in Case No. CR2005-0196 on five (5) counts of having a weapon while under a disability in violation of R.C. 2923.13(A)(3), felonies of the third degree, and one count of possession of a dangerous ordnance in violation of R.C. 2923.17(A), a felony of the fifth degree. At his arraignment on July 20, 2005, appellant entered a plea of not guilty to the charges contained in the indictment.
 {¶ 3} Thereafter, on July 20, 2005, appellant filed a Motion to Suppress, arguing that the search of his home was unconstitutional and that the guns seized during the same should be suppressed. A hearing on appellant's motion was held on August 26, 2005. The following testimony was adduced at the hearing.
 {¶ 4} Deputy Phillip Snider of the Muskingum County Sheriffs Department was working in his capacity as a deputy sheriff on June 6, 2005 and was serving arrest warrants with Deputy Tom Joseph. One of the arrest warrants was for Daniel Barnes.
 {¶ 5} At the hearing, Deputy Snider testified that, on the morning on June 6, 2005, he went with Deputy Tom Joseph to 1311 Walnut Drive in an attempt to serve the arrest warrant on Barnes who had lived at such address at one time. Both were in uniform at the time and were in a marked car. When Deputy Snider knocked on the *Page 3 
door, appellant's wife, Zahia Giamarco, answered the door. Deputy Snider then told her that he had an arrest warrant and was looking for Daniel Barnes.
 {¶ 6} At the hearing, Deputy Snider testified that he asked Zahia Giamarco for permission to enter the house to look for Daniel Barnes and that she gave it to him. The deputy further testified that, during the search, he found guns and that Zahia Giamarco indicated to him that she did not know to whom they belonged. According to Deputy Snider, appellant arrived at the house a short time later. The following testimony was adduced when Deputy Snider was asked whether appellant made any statements to him about appellant's knowledge of possession or ownership of the guns:
 {¶ 7} "A. As I initially found the weapons and Mrs. Giamarco stated that she had never seen them before, that raised suspicion in my mind. We did check all the weapons to see if they were stolen. None were.
 {¶ 8} "As we found them, again, she said she didn't know where they were coming from. When Mr. Giamarco showed up, I asked him if he knew whose the weapons were. He stated they belonged to his wife. And I then told him at that time that she said that she had never seen them before. He then said that the weapons belonged to his mother-in-law and she was on her way to the residence also." Transcript at 11.
 {¶ 9} The deputies, who never found Daniel Barnes at the scene, left the house with the guns. Appellant was not under arrest at such time.
 {¶ 10} On cross-examination, Deputy Snider testified that he had information that Daniel Barnes' sister was at the Walnut Drive address. He further testified that when he knocked on the door to appellant's house, he did not have an arrest warrant on him but *Page 4 
that Deputy Joseph, who had gone to the rear of the house, had a warrant on his person. According to Deputy Snider, after he told Zahia Giamarco that he had an arrest warrant for Daniel Barnes, she opened the door for him. Deputy Snider further testified that during the search of appellant's house, he saw a case under a bed in a bedroom and that he opened the case, which contained guns. When asked, the deputy testified that no human body could fit in the case. He further testified on cross-examination that he looked and saw a butt stock sticking out of an open closet and that, in the closet, he saw guns under some clothes. Deputy Snider also testified that he used a flashlight to verify that Barnes was not in the closet. The Deputy then removed the weapons before appellant arrived home.
 {¶ 11} On cross-examination, Deputy Snider also testified that once appellant showed up at the residence, they discovered that appellant was under a disability. He further testified that he did not recognize any of the guns as being illegal in and of themselves. When asked why he removed guns that were not illegal, Deputy Snider testified as follows: "Because we had no owner for the guns. The owner of the house had never seen the guns before. It did cause great suspicion." Transcript at 30. The following testimony was adduced when Deputy Snider was questioned about ownership of the guns:
 {¶ 12} "Q. Now, other than the conversations that you state in your report, did you have any other conversations with Mr. Giamarco concerning the ownership of the guns? *Page 5 
 {¶ 13} "A. No. We — other than what's in my report, no. We only spoke, like I said, on the porch. We would have talked around the cruiser a little bit when I was writing out the receipts. I think at that time he was saying they belonged to a cousin.
 {¶ 14} "Q. All right. Well, I understand what you say he said. Now, at — at any time did you find out during that day who the guns belonged to, who possessed the guns?
 {¶ 15} "A. We did not.
 {¶ 16} "Q. So you don't know to this day who possessed those guns?
 {¶ 17} "A. I know — yes, I know who possessed them. I guess I should say they were possessed by the Giamarcos in the residence.
 {¶ 18} "Q. The Giamarcos in the residence?
 {¶ 19} "A. Right.
 {¶ 20} "Q. You don't know who the owner of the guns were?
 {¶ 21} "A. No." Transcript at 34-35.
 {¶ 22} At the suppression hearing, Zahia Giamarco, appellant's wife, testified that a deputy knocked on her door on June 6, 2005, and told her that he had an arrest warrant for Daniel Barnes. She further testified that after the deputy showed her the warrant, she asked him if she could put some clothes on. When asked, Zahia Giamarco denied giving the deputy permission to enter her house and search the same. She testified that, after she put some clothes on, the deputy came in once she stepped back. According to Zahia Giamarco, the deputy, at approximately 10:00 a.m., then went into a bedroom where her children were sleeping and looked into an open closet where he found a gun. Zahia Giamarco testified that there were totes, pillow and blankets *Page 6 
covering the gun and that she "don't even know how he seen it." Transcript at 47. She testified that the deputy had to move the totes and other items to see the gun.
 {¶ 23} When asked whether, at any time during the search, she ever told the deputies that they had permission to search her house, Zahia Giamarco testified in the negative. She further testified that the deputy then went back into the bedroom and looked underneath the bed and pulled out a case and opened the same without her permission.
 {¶ 24} At the conclusion of the hearing, the trial court took the matter under advisement and granted the parties time to file briefs. As memorialized in a Decision filed on September 22, 2005, the trial court denied the Motion to Suppress stating, in relevant part, as follows:
 {¶ 25} "The court finds that the Deputy was in the house with permission. Upon seeing the weapons in plain view and receiving no good responses as to ownership of the weapons, as well as the fact that there were minor children near the weapons the officer acted correctly in removing the weapons until he could ascertain who owned them. This was for his protection as well as the protection of the minor children who were present."
 {¶ 26} Thereafter, on January 26, 2006, the Muskingum County Grand Jury indicted appellant in Case No. CR2006-0026 on two counts trafficking in drugs (crack cocaine) in violation of R.C. 2925.03(A)(1), felonies of the second degree, both with forfeiture specifications, and one count possession of drugs (cocaine) in violation of R.C. 2925.11(A), a felony of the fourth degree, also with a forfeiture specification. Appellant also was indicted on one count of having a weapon while under a disability in *Page 7 
violation of R.C. 2923.13(A), a felony of the third degree, and one count of possession of drug paraphernalia in violation of R.C.2925.14(C)(1), a misdemeanor of the fourth degree. At his arraignment on February 1, 2006, appellant entered a plea of not guilty to the charges.
 {¶ 27} On March 17, 2006, appellant pleaded no contest to all of the charges in Case No. CR2005-0196.
 {¶ 28} After his Motion to Suppress filed in Case No.CR2006-0026 was denied, appellant, on May 10, 2006, pleaded guilty to two counts of trafficking in drugs (crack cocaine) both with forfeiture specifications, and one count having a weapon while under disability. The remaining counts were dismissed.
 {¶ 29} Pursuant to Judgment Entries filed in both cases on June 26, 2006, appellant was sentenced to an aggregate prison sentence of twelve (12) years.
 {¶ 30} Appellant filed separate Notices of Appeal in the two cases. At the request of appellant, the two cases were consolidated by this Court.
 {¶ 31} Appellant now raises the following assignments of error on appeal:
 {¶ 32} "I. THE TRIAL COURT COMMITTED ERROR WHEN IT FAILED TO GRANT THE APPELLANT'S MOTION TO SUPPRESS ALL EVIDENCE REMOVED FROM THE APPELLANT'S RESIDENCE.
 {¶ 33} "II. IT WAS ERROR FOR THE TRIAL COURT TO DENY COUNSEL FOR THE APPELLANT TIME TO REVIEW THE PRE-SENTENCE INVESTIGATION REPORT DURING THE SENTENCING HEARING CONDUCTED ON JUNE 19, 2006." *Page 8 
 I {¶ 34} Appellant, in his first assignment of error, argues, with respect to Case No. CR2005-0196, that the trial court erred in denying the Motion to Suppress all evidence removed from appellant's residence. We agree in part.
 {¶ 35} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. See State v.Fanning (1982), 1 Ohio St.3d 19, 437 N.E .2d 583; State v. Klein (1991),73 Ohio App.3d 486, 597 N.E.2d 1141; State v. Guysinger (1993),86 Ohio App.3d 592, 621 N.E.2d 726. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See State v. Williams (1993),86 Ohio App.3d 37, 619 N.E.2d 1141, overruled on other grounds. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case.State v. Curry (1994), 95 Ohio App.3d 93, 641 N.E.2d 1172; State v.Claytor (1993), 85 Ohio App.3d 623, 620 N.E.2d 906; Guysinger, supra. As the United States Supreme Court held in Ornelas v. U.S., (1996),517 U.S. 690, 116 S.Ct. 1657," . . . as a *Page 9 
general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."
 {¶ 36} In a motion to suppress, the trial court assumes the role of trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate witness credibility. Guysinger, supra, at 594 (citations omitted). Accordingly, an appellate court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Id., citing State v. Fausnaugh (Apr. 30, 1992), Ross App. No. 1778, 1992 WL 91647.
 {¶ 37} In the case sub judice, there is no dispute that Deputy Snider did not have a warrant to search appellant's home. Rather, the warrant was for the arrest of Daniel Barnes.
 {¶ 38} Under the Fourth Amendment to the Constitution of the United States and Section 14, Article I of the Constitution of Ohio, individuals are entitled to be secure in their persons and effects against unreasonable searches and seizures. Warrantless searches are per se unreasonable. State v. Kessler (1978), 53 Ohio St.2d 204, 207. To this rule, there are but a few specifically established exceptions. It is the burden of the state to prove that one of these exceptions apply. Id. If the state fails to meet its burden, evidence obtained as the result of the warrantless intrusion may not be used in evidence.Mapp v. Ohio (1961), 367 U.S. 643, 654-655, 81 S.Ct. 1684. One of the exceptions to the requirement for a search warrant is when police obtain the voluntary consent to search from one who owns or possesses the property to be searched or one who is a cotenant, possessing common authority over the property. United States v. Matlock (1974),415 U.S. 164, 170-171, 94 S.Ct. 988. *Page 10 
 {¶ 39} As is stated above, while Deputy Snider testified at the suppression hearing that Zahia Giamarco, appellant's wife, gave him consent to search appellant's home for Daniel Barnes, she testified that she never gave him consent but that he entered after she returned from putting her clothes on. However, with respect to a motion to suppress, the trial court assumes the role of trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate witness credibility. Guysinger, supra, at 594. The trial court, as trier of fact, clearly found Deputy Snider to be more credible than appellant's wife. Thus, we find that Deputy Snider had consent to search appellant's house for Daniel Barnes.
 {¶ 40} However, the scope of a search authorized by consent cannot exceed the terms of the consent. State v. Glover (1978),60 Ohio App.2d 283, 396 N.E.2d 1064. According to Deputy Snider's testimony, Zahia Giamarco gave him consent to search for Daniel Barnes. Thus, Deputy Snider was authorized to search in closets and under beds because Daniel Barnes could have been hiding in these places. Because he testified at the suppression hearing that no human body could fit in the case found under the bed, Deputy Snider did not have authorization to open and search the same. His search of the case exceeded the terms of the consent.
 {¶ 41} The next issue for consideration is whether the trial court erred in denying the Motion to Suppress with respect to the guns in the closet. We concur with the trial court that Deputy Snider was justified in removing the same. When asked who the weapons belonged to, Zahia Giamarco stated that she did not know. She further stated that she had never seen the guns, which were in a closet located in a room where children were sleeping, before. We agree with the trial court that Deputy Snider acted *Page 11 
correctly in removing the weapons from the closet until he could ascertain who owned them and that "[t]his was for his protection as well as the protection of the minor children who were present." When he found the weapons in the closet, Deputy Snider was searching for Daniel Barnes for whom he had an arrest warrant. Thus, it is understandable that he removed the weapons for purposes of safety.
 {¶ 42} We further find that the actual seizure of the weapons did not occur until appellant arrived home and it was discovered that he was under a legal disability to possess firearms. As noted by appellee, appellant's legal disability provided Deputy Snider with the legal basis to seize the weapons. We find, therefore, that the trial court did not err in denying appellant's Motion to Suppress as to the guns in the closet.
 {¶ 43} Based on the foregoing, we find that the trial court erred in denying appellant's Motion to Suppress as to the guns in the case under the bed but not as to the guns in the closet.
 {¶ 44} Appellant's first assignment of error is, therefore, sustained in part and overruled in part.
 II {¶ 45} Appellant, in his second assignment of error, argues that, the trial court erred in denying him time to review the presentence investigation report during the June 19, 2006, sentencing hearing. We disagree.
 {¶ 46} At the June 19, 2006, sentencing hearing, the following discussion took place between the trial court and defense counsel:
 {¶ 47} "MR. FARMER: Yes, Your Honor. We have not seen the P.S.I., and I would like to review it briefly. *Page 12 
 {¶ 48} "THE COURT: You needed to be here before court started to see it.
 {¶ 49} "MR. FARMER: I did make calls. The last time I did talk to someone from the probation department, she told me it was not complete and that they would —
 {¶ 50} "THE COURT: You have to review it here at the court prior to sentencing.
 {¶ 51} "MR. FARMER: When I did come in, Your Honor, I did go the bailiff; and he said I had to wait until now to ask the Court.
 {¶ 52} "THE COURT: Court had already started when you got here.
 {¶ 53} "MR. FARMER: Your Honor, I have — I am I have not seen the P.S.I., and I am not — I don't know.
 {¶ 54} "THE COURT: It's not my fault.
 {¶ 55} "MR. FARMER: Pardon me?
 {¶ 56} "THE COURT: It's not my fault you haven't seen it.
 {¶ 57} "MR. FARMER: I'm not saying it is.
 {¶ 58} "THE COURT: We're not going to hold up our proceeding to see it now. You can proceed to make any statement you wish to make in regards to your — about your client's sentencing.
 {¶ 59} "MR. FARMER: Your Honor, I am not saying it is the Court's fault. I just was trying to state the facts for the record that I cannot object to something that I did not see, that I did communicate with the probation office and they were to notify me when it was complete.
 {¶ 60} "Had I known I should have been here earlier before court started to review it, I would have. And based upon that, I have nothing to say, Your Honor, other than I hope that the Court accepts the recommendation in this case as recommended *Page 13 
by the — by the prosecution when the plea was entered. Thank You . . .? Transcript of June 19, 2006 hearing at 4-5.
 {¶ 61} Based on the facts of this case, we find that the trial court did not err in denying counsel time to review the presentence investigation report. Had counsel arrived before court started, he would have been able to review the report. We further note that appellant's counsel, in his brief, indicates that "after conscientious examination of the record and case law [he] has concluded that the issue cited above is wholly frivolous" and that there is no case law or statute in support of the same.
 {¶ 62} Appellant's second assignment of error is, therefore, overruled.
 {¶ 63} Accordingly, the judgment of the Muskingum County Court of Common Pleas is affirmed in part and reversed and remanded in part as to Case No. CR2005-0196.
 {¶ 64} The judgment of the Muskingum County Court of Common Pleas is affirmed as to Case No. CR2006-0026.
Edwards, J., Delaney, J. concurs and Hoffman, P.J., concurs in part, and dissents in part. *Page 14 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Muskingum County Court of Common Pleas is affirmed in part and reversed and remanded in part as to Case No. CR2005-0196. The judgment of the Muskingum County Court of Common Pleas is affirmed as to Case No. CR2006-0026. Costs assessed 50% to appellee and 50% to appellant in Case No. CR2005-0196. Costs assessed to appellant in Case No. CR2006-0026.