**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Frankie GUNN, Defendant-Appellant.**

**No. 28026.**

United States Court of Appeals,
Fifth Circuit.

June 25, 1970.

A. Pope Gordon, Montgomery, Ala., court-appointed, for appellant, Mrs. Frankie Gunn, pro se.

Ira De Ment, U. S. Atty., D. Broward Segrest, Asst. U. S. Atty., Montgomery, Ala., for appellee.

Before WISDOM, AINSWORTH and CLARK, Circuit Judges.

AINSWORTH, Circuit Judge:

Frankie Gunn appeals from her conviction on all six counts of an indictment charging her with mail fraud in violation of 18 U.S.C. § 1341. The indictment specifically charged Gunn with using the mails as part of a scheme to defraud through the employment of gasoline company credit cards issued to others, during the months of June, August, and September 1968. On this appeal Gunn does not question the sufficiency of the evidence to convict her. Instead, as in the pretrial hearing on her motion to suppress, she questions the admissibility of certain evidence at her trial in light of applicable federal standards. We conclude that her trial comported with these standards and affirm the judgment of conviction.

In July 1968, Charles Davis, a federal postal inspector, received a complaint from Alexander Susha involving the unauthorized use by an unknown person of a gasoline company credit card issued to Susha. Until September 25, 1968, Davis corresponded with gasoline companies and obtained certain invoices, but otherwise conducted no investigation of the complaint. On the morning of September 25, Davis checked certain vehicle registration records and, through these records, traced a certain tag number and vehicle to Frankie Gunn. The tag number indicated that the vehicle was an Oldsmobile. From the person who had sold the Oldsmobile to Gunn, Davis obtained a description of Gunn and learned that she was employed at Head's Car Wash on the Southern Bypass in Montgomery, Alabama. Davis had an invoice indicating that the Susha card had been used to make a purchase at a service

station on the Southern Bypass. Davis went there and interviewed the operator, Willie Holladay. Holladay described the customer who had used the Susha card. This description resembled the description Davis had previously received of Gunn. Davis then went to Head's Car Wash, where Frankie Gunn and her automobile were pointed out to him. The automobile was a Plymouth, and its tag number did not appear on the invoices he was investigating. Davis then left the car wash to check the Plymouth tag number. He determined that the tag had been issued to a Ford automobile, not a Plymouth. Davis then contacted two Montgomery city detectives who investigated automobile thefts and with whom Davis had worked before on investigations. The postal inspector, advising the detectives that he was working on a credit card case, asked if they were interested in checking the Plymouth. The detectives replied that they were interested.

On the afternoon of September 25, Davis returned to Head's Car Wash with the two detectives. Neither Davis nor the detectives had arrest or search warrants. One detective, telling Gunn that the Plymouth was improperly tagged, then questioned her regarding the ownership of the car. Gunn stated that she owned the car and, in response to the detective's request for proof went to the car to search for the bill of sale. While she was handling papers she had taken from the glove compartment, a credit card fell to the floor of the car in the view of one detective. He handed the card, which had been issued to R. M. Srygley, to Davis. The postal inspector had not previously been investigating use of a credit card issued to this man. Aware that Gunn was on parole from the State of Alabama, Davis then informed Gunn of her *Miranda* rights with the use of a warning-and-waiver form. Gunn stated that she understood, but refused to sign the form. Davis then looked at the tires on the Plymouth. He noted that one of the tires, whose serial number faced outward had a number match-

ing the serial number on one of the Susha credit card invoices. The other tires, whose numbers faced inward, were then checked by a city detective, who had to crawl under the car to obtain them. One of these tires also appeared to have been purchased with the Susha credit card. The detectives then took Gunn into the office of the car wash. There they called her parole officer, a Mr. Shook, and advised him of the circumstances attending the questioning of Gunn and of what they had apparently discovered. Shook replied that he would meet them at the Montgomery city jail with a parole violation warrant for Gunn and requested that they arrest Gunn. The arrest was formally made, and Davis, Gunn, and a city detective proceeded to the jail in a city automobile. On the way, Gunn was taken to Holladay's service station, where the two tires had been purchased with the Susha card. She was there exhibited to Holladay.

At the jail Gunn was booked for parole violation. Davis asked her for handwriting exemplars, and Gunn gave them. Then, on September 26, a warrant for Gunn's arrest for mail fraud was sworn out by the postal inspector and Gunn was taken before a United States Commissioner that afternoon. At this time, she first asked for a lawyer to represent her. On September 27, Davis asked Gunn for a second set of handwriting specimens, after first advising her of her constitutional rights. She complied. A lawyer was appointed for Gunn on September 30, and prosecution on the federal charges followed.

Before trial Gunn filed a motion to suppress for use as evidence by the prosecution, among other items, (1) the matter taken from her automobile while she, Davis, and the city detectives were at Head's Car Wash, (2) the handwriting exemplars, and (3) the eyewitness identification of her by Holladay. A hearing was conducted on this motion under Fed.R.Crim.P. 41(e). At this hearing Davis, the two city detectives, and Gunn testified. Thereafter the District Judge, filing findings and conclusions, denied

the motion. The evidence here complained of was then introduced at trial by the Government, and, the jury returned a verdict of guilty on all six counts.

On this appeal Gunn contends principally that she was unlawfully arrested, that the taking of the serial numbers of the tires on her car was an unlawful search and seizure, and that the arresting officer unnecessarily delayed in taking her before a United States Commissioner in violation of Fed.R.Crim.P. 5 (a).

We first consider the validity of Gunn's arrest on September 25. Gunn argues that the city detectives did not have probable cause to arrest her and that they arrested her in violation of Ala.Code tit. 42, § 10. This section provides:

> "If the probation and parole officer having charge of a paroled prisoner * * * shall have reasonable cause to believe that such prisoner has lapsed, or is probably about to lapse, into criminal ways or company, or has violated the conditions of his parole in an important respect, such probation and parole officer * * * shall report such fact to the department of corrections and institutions who thereupon shall issue a warrant for the retaking of such prisoner and his return to the prison designated. Any probation and parole officer, police officer, sheriff or other officer with power of arrest upon the request of the probation and parole officer may arrest a parolee without a warrant. In case of an arrest without a warrant the arresting officer shall have a written statement by said probation and parole officer setting forth that the parolee has, in his judgment, violated the conditions of parole and said statement shall be sufficient warrant for the detention of said parolee. * * * "

Gunn contends that the city detectives violated this section by arresting her before they obtained a written statement from Shook, her parole officer.

In denying the pretrial motion to suppress, the District Court found that the arrest was made on probable cause by the Montgomery city detectives at or immediately before Gunn was taken from Head's Car Wash. The District Court also found that the arrest on the federal charges was not made until September 26. The findings of a District Court on a pretrial motion to suppress are binding upon this Court unless they are clearly erroneous. United States v. Montos, 5 Cir., 1970, 421 F.2d 215; United States v. Ogle, 5 Cir., 1969, 418 F.2d 238; see 3 Wright, Federal Practice and Procedure § 675, at 130 (1969). The record made at the pretrial hearing, reinforced by the record of the trial itself, indicates clearly that the city detectives had sufficient knowledge of facts "to justify a man of reasonable caution and prudence in believing that the arrested person had committed * * * an offense." Miller v. United States, 5 Cir., 1966, 356 F.2d 63, 66; see Woodbury v. Beto, 5 Cir., 1970, 426 F.2d 923; United States v. Trabucco, 5 Cir., 1970, 424 F.2d 1311. Under the circumstances of this case, it is also clear that Shook and the detectives complied in substance with Ala.Code tit. 42, § 10. The arrest, therefore, was lawfully effected.

We dispose quickly of Gunn's search-and-seizure argument regarding the serial numbers of the tires. The inspection of tires on a motor vehicle, performed by police officers entitled to be on the property where the vehicle was located, which in no way damaged the tires or the vehicle and was limited to determining the serial numbers of the tires was not a search within the Fourth Amendment. Alternatively, if the inspection is deemed to have constituted a Fourth Amendment "search," a search warrant was not necessary because the inspection was reasonable and did not violate Gunn's right to be secure in her person, house, papers, or effects. United States v. Johnson, 5 Cir., 1969, 413 F.2d 1396, 1399–1400, pending decision en banc; United States v. Graham, 6 Cir.,

1968, 391 F.2d 439; Cotton v. United States, 9 Cir., 1967, 371 F.2d 385.

 The handwriting exemplars, we conclude, were properly admitted into evidence. Introduction of these exemplars violated neither Gunn's Fifth Amendment rights, Gilbert v. State of California, 388 U.S. 263, 266–267, 87 S.Ct. 1951, 1953, 18 L.Ed.2d 1178 (1967); Schmerber v. State of California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), nor her Sixth Amendment rights, Gilbert v. State of California, 388 U.S. 263, 267, 87 S.Ct. 1951, 1953–1954 (1967); Lewis v. United States, 1967, 127 U.S.App.D.C. 269, 382 F.2d 817.

We consider, finally, whether there was an unnecessary delay in taking Gunn before a United States Commissioner and whether the allowance of Holladay's in-court identification of Gunn as the person who had used the Susha credit card to purchase tires at his station was reversible error under United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). Gunn contends that under the circumstances attending her arrest and detention by the Montgomery police, the period of state detention should be deemed a period of federal detention and that the reasonableness of the delay in taking her before a United States Commissioner should be measured accordingly. We disagree. Having carefully reviewed the record, we are convinced that there was no collaboration between the postal inspector and the city detectives to achieve an unlawful end and no collusion between federal and state officials in frustrating the accused's right to a prompt arraignment. The arrest of Gunn by the city detectives and her detention in the Montgomery jail were consistent with Alabama law. Moreover, the record establishes that the arrest was not made on a minor charge simply for the purpose of holding Gunn to gather evidence. Federal custody, we conclude, began on September 26 when Gunn was arrested on the federal warrant. Under these circumstances, Fed.R.Crim.P. 5(a) was satisfied.

At trial Holladay testified that, to his "best judgment," Gunn was the person who had purchased tires from him with the Susha credit card. He stated, however, that he could not be sure since it was difficult to determine whether the purchaser had been a man or a woman. We conclude that, whether or not this in-court identification, such as it was, had a source independent of the exhibition of Gunn to Holladay before trial, introduction of this evidence was, beyond a reasonable doubt, harmless error. United States v. Wade, 388 U.S. 218, 242, 87 S.Ct. 1926, 1940, 18 L.Ed.2d 1149 (1967); Chapman v. State of California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). See also Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969). The Government introduced evidence wholly apart from this in-court identification which pointed overwhelmingly to Gunn's guilt. Moreover, Holladay's testimony was as consistent with the theory of the defense as it was with the theory of the prosecution.

We have carefully considered Gunn's other contentions on this appeal and find them to be without merit.

Affirmed.