162 N.J. Super. 308 (1978)
392 A.2d 681
STATE OF NEW JERSEY, PLAINTIFF,
v.
RICHARD M. GRIFFIN, DEFENDANT.
Superior Court of New Jersey, Law Division (Criminal).
Decided August 24, 1978.
*310 Mr. Howard Brownstein for defendant (Messrs. Brownstein and Gold, attorneys).
Mr. Robert Zatorski for the State (Mr. James T. O'Halloran, Prosecutor of Hudson County, attorney).
GILMORE, J.J.D.R.C. (temporarily assigned).
It has been called the "idiot box" and other opprobious names. It has been a boon to baby sisters, shut-ins and people who cannot buy a ticket to the game. It is our television set. Now it constitutes the third ingredient in this motion to suppress. It is teamed with an officer's curiosity and the Fourth Amendment.
The facts garnered from affidavits, a police report and testimony given before the grand jury, are substantially undisputed. On September 27, 1977 Detective Donald Nagle of the Jersey City Police Department entered premises rented by Barbara Jones and occupied by the defendant Griffin. He was armed with a search warrant and his quest was narcotics. He sighted and sequestered the same. Prior to his departure, he observed two television sets unobtrusively located. One was in the parlor and the other was in the bedroom. Succumbing to the feline propensity, he peeked at the rear of each set and recorded its individual serial number.
Upon returning to headquarters his inquiry to the National Crime Information Center disclosed that these sets had been recently stolen from an establishment known as "Levy Brothers." Incorporating this information in an affidavit, he obtained another search warrant and took possession of the TVs. Defendant maintains that the method employed by the officer to obtain the knowledge of the serial numbers violated Griffin's Fourth Amendment rights.
In the scrimmage between the defense counsel and the prosecutor, the former attacks with State v. Wilson, 279 Md. *311 189, 367 A.2d 1223 (Ct. App. 1977), and State v. Murray, 84 Wash.2d 527, 527 P.2d 1303 (Sup. Ct. 1974). Law enforcement stands ensconced behind the ramparts of United States v. Gunn, 428 F.2d 1057 (5 Cir.1970), and Cotton v. United States, 371 F.2d 385 (9 Cir.1967). Lest there repose any doubt in the mind of the reader, in Wilson both the State and defendant did "treat the taking of the serial numbers as a seizure within the meaning of the Fourth Amendment." Of less unanimity is Murray wherein five justices held that
The serial numbers were not within the plain view of the officers, and their being obtained by the tilting of the Sony television constituted a warrantless seizure of those numbers.
However, four justices of that court felt that the viewing and checking of serial numbers, even if in places which are difficult to observe, is not a search.
The prosecutor asserts that the holding of Gunn, supra, makes his position impregnable. Gunn proclaims that the inspection of tires on a motor vehicle was located which in no way damaged the tires or the vehicle and was limited to determining the serial numbers of the tires, was not a search within the Fourth Amendment. The prosecutor also takes refuge in the formidable verbiage of Cotton, supra. It was held that it was not a "search" for an F.B.I. agent to look at the outside of an automobile and thus determine its make, model, color and license number.
Both participants advise the court that their labors have not uncovered any recorded New Jersey case on point. A precedent conformable to the circumstances of a particular case is not always apparent in our own reported decisions. But why search for a decision that would mirror the present factual circumstances? Chief Justice Weintraub has shown us the polestar in a trilogy of cases, namely, State v. Gerardo, 53 N.J. 261 (1969); State v. Smith, 37 N.J. 481 (1962), and Eleuteri v. Richman, 26 N.J. 506 (1958).
Rather than quote ad infinitum from the foregoing cases, it will make easier reading if the thoughts of the Chief Justice *312 are collated without disturbing his words. He lets us know that the first right of an individual is to be protected from criminal attack. That is the reason for government. Of course, defendant says that he, too, is an individual and possesses the rights enumerated in the Fourth Amendment. True, quite true. But the Fourth Amendment does not call for the suppression of evidence obtained in violation of its provisions. The doctrine of suppression is judge-made. Suppression is ordered, not to rectify a wrong already done, but to deter future violations. Its purpose is to preclude insolence in office. One might opine that it would be antithetical to the individual's right to be protected from crime if the court were to set an offender free when there is no trace of official arrogance. Certainly, official activity which is a deliberate and flagrant violation of constitutional guarantees cannot be condoned. On the other hand, minor intrusions of privacy should not call for suppression of evidence of a crime. It would seem that the rule of exclusion should be confined to situations in which bad faith or indifference to this right is palpable. Accepting as our postulate that the exclusionary rule is a prophylactic to deter insolence in office, it follows that the sanction should be imposed only when conduct of that character appears.
While the defendant places such heavy reliance upon the 5-4 Murray decision, one must notice that its effect was prenatally anticipated and dissipated by the foresight of the Chief Justice:
It is one thing to condemn the produce of an arrogant defiance of the Constitution; it is another to impose the sanction when the official intends to respect his oath of office but is found to be mistaken, let us say, by the margin of a single vote. See Eleuteri v. Richman, 26 N.J. 506, 514.
The actions of Officer Nagle did not interfere with the structural integrity of the TV sets. The Fourth Amendment rights of defendant must be weighed against the obligation of the State to protect the lives and property of its citizens. *313 The officer peeked behind two television sets. Should he, or the information he uncovered, be turned into a judicial piller of salt not unlike Lot's wife? Gen. 19, 26. No! The course of the ship of state must not be blockaded by theoretical niceties. There being no demonstration of insolence in office, the facts exposed are constitutionally unassailable.
Although the case was not argued in this vein, it is not redundant to remind ourselves that this is not a warrantless search. The confiscation of the TV sets was accomplished in accordance with a duly issued warrant. The granting of the warrant both cloaks the search with "an aura of prima facie legality" and constitutes a substantial factor in favor of a conclusion of validity. State v. Kasabucki, 52 N.J. 110, 123 (1968). When a challenged search is made under the authority of a search warrant, the warrant is presumed valid and the burden of establishing its invalidity rests upon the defendant. State v. Singleton, 158 N.J. Super. 517, 525 (App. Div. 1978). Said another way, the burden of going forward with proof of the warrant's alleged invalidity rests upon the movant. State v. Schumann, 156 N.J. Super. 563, 565 (App. Div. 1978). No such burden was shouldered by this defendant.
This motion to suppress the evidence is denied.