STATE of Wisconsin, Plaintiff-Appellant,

v.

Kevin R. NOLL, Defendant-Respondent-Petitioner.

Supreme Court

*No. 82–562–CR. Argued November 30, 1983.—*
*Decided January 31, 1984.*

(Also reported in 343 N.W.2d 391.)

444

For the defendant-respondent-petitioner there were briefs by *Robert P. Rusch* and *Rusch & Rusch Law Offices,* Medford, and oral argument by *Robert P. Rusch.*

For the plaintiff-appellant the cause was argued by *David J. Becker,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

DAY, J.   This is a review of a court of appeals decision reversing a suppression order of the circuit court for Taylor county, Honorable John W. Stevens, Circuit Judge. The three issues on this review are: (1) Is a search warrant which is defective in its description of some items nevertheless valid as to other items described with sufficient particularity; (2) Is the doctrine of partial validity or "severability" applicable under the facts of this case; and (3) Does a reasonable suspicion that a television set, observed during execution of a search warrant, was stolen justify an officer in recording its serial number. We conclude that the excising of invalid parts of an otherwise valid warrant is permissible under the fourth amendment and we hereby adopt the severability doctrine as first enunciated by the Supreme Court of California in *Aday v. Superior Court of Alameda County,* 55 Cal. 2d 789, 362 P.2d 47, 13 Cal. Rptr. 415 (1961). We also conclude that the severability doctrine should be applied in this case, and that, under the facts of this case, the defendant's rights were not violated by the recordation of the television serial number. We conclude that a second warrant listing that television along with other items stolen in the same burglary was

proper and validated the subsequent arrest of the defendant and did not vitiate confessions to the burglary made by the defendant following his arrest. We therefore affirm the decision of the court of appeals reversing the order of the trial court.

The defendant, Kevin R. Noll, is charged with the burglary of the Reinke residence in the Town of Taft, Taylor County, Wisconsin, in violation of sec. 943.10 (1) (a), Stats. 1979.[1] In a pretrial motion, the defendant sought the suppression of certain evidence seized in a search of his father's home on November 2, 1981, as well as statements made by the defendant to police after his arrest on that date. The defendant argues that the physical evidence, his arrest and the statements he gave are tainted fruit of an earlier illegal search of the same residence on October 27, 1981, and therefore must be suppressed. The facts are as follows.

On October 27, 1981, a warrant was issued by the circuit court for Chippewa county to search the Noll residence in Taylor county for certain items taken from an auction held on October 25th in Chippewa county.[2] That

[1] "943.10. Burglary. (1) Whoever intentionally enters any of the following places without the consent of the person in lawful possession and with intent to steal or commit a felony in such place is guilty of a Class C felony:

"(a) Any building or dwelling; or . . ."

[2] The warrant states that at the Webb auction the defendant successfully bid on certain items, including those items named in the search warrant, using the identification number of another individual. The defendant left the auction with those items without paying for them. When the defendant's deceit was discovered, the auction clerk and another individual went to the defendant's residence. The defendant initially denied that he had the items, but the auction clerk and the other individual saw them inside the defendant's house. When informed that the goods had been seen, the defendant agreed to pay for the less expensive items and gave them a check for $29.00, the price for the vases and various pieces of glassware. The defendant then refused to pay for the record albums or the bookends. This information was reported to Chippewa

warrant authorized the seizure of "a set of antique ceramic book ends in the shape of horses and advertising Rolling Rock Beer; various long-play phonograph record albums, and miscellaneous vases and glassware items, all of which were removed from an auction at the Milo M. Webb residence in Stanley, Wisconsin on October 25, 1981 without having been paid for."

On October 27, Deputy Sheriff Bill Glass of Chippewa county and Deputy Sheriffs Dan Kraschnewski and Norman Dassow of Taylor county executed the warrant at the Noll residence which was located in Taylor county. The officers knocked on the door and were admitted by the defendant and his father into the kitchen. Deputy Sheriff Glass informed the Nolls that they were there to recover items from the auction and gave a copy of the warrant to the defendant's father. The Nolls cooperated with the officers and turned over the antique book ends, various phonograph albums and some glassware, all of which were in the kitchen. Some additional glassware was brought to the kitchen by the defendant from his bedroom.

From where he was standing in the kitchen, Deputy Sheriff Dassow noticed a small television set. In the hearing on the motion to suppress, he testified concerning his observation of the television as follows:

"Q    Now, directing your attention to what you saw in the living room from where you were standing in the kitchen, did you notice anything unusual or different?

"A    The TV which—which was sitting in the kitchen matched the one described by James Reinke in his complaint to us as being stolen from him.

"Q    And that was in the kitchen?

"A    Yes, it was."

county authorities and a search warrant was issued. The defendant does not challenge the trial court's finding of probable cause for the October 27th search.

Deputy Dassow did not check the serial number or otherwise inspect the television at that time. Rather, he and Deputy Kraschnewski proceeded to compile an inventory of 109 items located in various parts of the house and the surrounding outbuildings. The inventory included a description of the article and in many cases a serial number. The twenty-ninth item on the list was the twelve inch, black and white General Electric television seen by Deputy Dassow in the kitchen. The inventory also showed the television's serial number. The whole search took about two hours. Just prior to the officers leaving, the defendant turned over a glass sugar bowl that had been sitting on the kitchen table that was part of the Webb property.

The Taylor county officers returned to their office and checked the inventory against reports of goods taken in burglaries. They found that a large number of items on the list had been reported stolen in Taylor county. Among the matches were five of the items taken in the Reinke burglary including a Sharp color television, a Waring blender, a Channel Master rotor, a Skil saw and the General Electric television.

With this information, the officers obtained a second warrant to search the Noll residence which was executed on November 2, 1981. At that time a large number of items (allegedly from other burglaries) were seized including three of the five items specifically mentioned in the warrant but not the General Electric television which was no longer there. The officers arrested the defendant at that time and took him to the Taylor County Sheriff's Department. After being apprised of and waiving his "Miranda rights," the defendant made a statement to Deputy Dassow confessing to the Reinke burglary. The following morning, he made another statement to Deputy Sheriff Raymond Meyer. Later that day he was formally charged with burglary of the Reinke home.

It is evident that probable cause for the November 2nd search and the defendant's arrest depends on information obtained during the October 27th search. If the October 27th entry of the Noll house was illegal, the evidence seized on November 2nd and the defendant's arrest and statements are tainted and must be suppressed. *Wong Sun v. United States*, 371 U.S. 471 (1963). However, if the October 27th entry was based on a valid search warrant and if the recordation of the serial number on the television was proper, there was probable cause to support the November 2nd warrant to search for the television and other items taken in the Reinke burglary.

On the defendant's motion to suppress, the trial court held that the physical evidence and the statements were tainted and ordered them suppressed. The court rested its holding on two grounds: First, the court held that the October 27th warrant was defective in its failure to meet the fourth amendment's particularity requirement in its description of the phonograph albums, vases and the glassware, and that this defect rendered the entire warrant invalid. Second, the court held that the search was illegal because it exceeded the scope of the warrant. The court stated that the search for the named items was simply a pretext by the Taylor county deputies for a general exploratory search in an attempt to solve other break-ins and burglaries. The court concluded that "this search [of October 27] greatly exceeded the scope of the search warrant and the fruits of the search must be suppressed." These "fruits," according to the trial court, included the items from the Reinke burglary listed in the November 2nd warrant, the arrest of the defendant and the confessions to the Reinke burglary made by the defendant following his arrest.

The court of appeals reversed the decision of the trial court. *State v. Noll*, 111 Wis. 2d 587, 331 N.W.2d 599 (Ct. App. 1983). It held that the initial entry was au-

thorized by the valid portion of the warrant and that the television stolen in the Reinke burglary was observed while the officers were in a place where they were lawfully authorized to be. The court of appeals further held that the recordation of the serial number was "simply good police practice, and it constituted neither a search nor a seizure." 111 Wis. 2d at 592. The television could then be used as a basis for the second warrant which named items from the Reinke theft.

The first step in determining whether the challenged evidence must be suppressed is to determine whether the initial entry into the Noll's kitchen was lawful. In order to resolve that question, we must consider whether a defect in the description of some, but not all, of the items to be seized renders the whole warrant invalid.

The fourth amendment to the United States Constitution requires that a search warrant "particularly describ[e] the place to be searched, and the persons or things to be seized." The original purpose of the particularity requirement was to do away with the evils of the general warrant known to the colonists as the writ of assistance. These writs, which were issued on "mere suspicion," gave customs officials blanket authority to search wherever they pleased for any goods imported in violation of British tax laws. *United States v. Christine,* 687 F.2d 749, 755 (3rd Cir. 1982), 1 W. LaFave, *Search and Seizure* sec. 1.1 (1978). Today the particularity requirement prevents the government from engaging in general exploratory rummaging through a person's papers and effects in search of anything that might prove to be incriminating. *Coolidge v. New Hampshire,* 403 U.S. 443, 467 (1971); *State v. Starke,* 81 Wis. 2d 399, 413, 260 N.W.2d 739 (1977). In order to satisfy the particularity requirement, the warrant must enable the searcher to reasonably ascertain and identify

the things which are authorized to be seized. *Steele v. United States*, 267 U.S. 498, 503 (1925) ; *United States v. Cook*, 657 F.2d 730, 733 (5th Cir. 1981). The use of a generic term or general description is constitutionally acceptable only when a more specific description of the items to be seized is not available. *United States v. Cook*, 657 F.2d at 733.

Based on these standards, we determine that the portion of the warrant authorizing the seizure of "various long play phonograph albums, and miscellaneous vases and glassware items" is constitutionally defective. A more particular description of those items could have been provided. Therefore, the use of the generic terms vases, glassware and long play phonograph albums lacks the required particularity. We also determine that the portion of the warrant authorizing the seizure of "a set of antique ceramic book ends in the shape of horses and advertising Rolling Rock Beer" is sufficiently particular to satisfy the constitutional requirement.

This court has not previously addressed the issue of the appropriate remedy when a search warrant provides a constitutionally adequate description of some items but is defective in the description of others. The leading case on the subject is the California Supreme Court decision in *Aday v. Superior Court of Alameda County*, 55 Cal. 2d 789, 362 P.2d 47, 13 Cal. Rptr. 415 (1961). The warrant under consideration in that case purported to authorize the seizure of two named books and a long list of other items described only generally.[3] The court acknowledged that the warrant was partially defective but refused to hold it entirely invalid. Rather than suppress everything seized, the court chose to sever the

---

[3] The warrant also authorized the seizure of copies of federal and state income tax forms. The court held that the seizure of the tax returns was invalid because they were privileged.

defective parts of the warrant and suppress only those items that were not particularly described. The court stated:

"Although the warrant was defective . . . , it does not follow that it was invalid as a whole. Such a conclusion would mean that the seizure of certain articles, even though proper if viewed separately, must be condemned merely because the warrant was defective with respect to other articles. The invalid portions of the warrant are severable from the authorization relating to the named books, . . . . The search for and seizure of these books, if otherwise valid, were not rendered illegal by the defects concerning other articles. 55 Cal. 2d at 797, 362 P.2d at 52, 13 Cal. Rptr. at 420."

Since 1961 when *Aday* was decided, numerous state and federal courts have adopted the severability doctrine. *Walthall v. State,* 594 S.W.2d 74 (Tex. Crim. App 1980); *Butler v. State,* 130 Ga. App. 469, 203 S.E.2d 558 (1973); *People v. Mangialino,* 75 Misc. 2d 698, 348 N.Y.S.2d 327 (1973); *State v. Johnson,* 160 Conn. 28, 273 A.2d 702 (1970); *State v. Kealoha,* 62 Hawaii 166, 613 P.2d 645 (1980); *Com. v. Labelle,* 15 Mass. App. 175, 443 N.E.2d 1351 (1983); *United States v. Giresi,* 488 F. Supp. 445 (D. N.J. 1980) aff'd. mem., 642 F.2d 444, (3rd Cir. 1981), cert. denied, 452 U.S. 939 (1981); *United States v. Cardwell,* 680 F.2d 75 (9th Cir. 1982); *United States v. Cook,* 657 F.2d 730 (5th Cir. 1981); *United States v. Christine,* 687 F.2d 749 (3rd Cir. 1982); *United States v. Riggs,* 690 F.2d 298 (1st Cir. 1982). In a recent and carefully reasoned opinion the United States Third Circuit Court of Appeals considered the doctrine of severability or "redaction" in light of five functions identified as underlying the fourth amendment warrant requirement. Those five functions are: (1) safeguarding citizens from unreasonable interference with privacy while also according leeway for enforcing the law to

protect the community; (2) preventing individual privacy from being subjected to the whims of law enforcement officers who are often engaged in the competitive enterprise of ferreting out crime by interposing a neutral judicial officer to weigh the need to invade privacy in order to enforce the law; (3) limiting the scope of the intrusion; (4) notifying the subject of the search that his privacy must yield to the public's need for law enforcement; and (5) generating a record susceptible to subsequent judicial review. *United States v. Christine,* 687 F.2d at 756. The court concluded that redaction of a partially valid warrant is consistent with all five purposes of the warrant requirement.

"First, with respect to the search and seizure conducted pursuant to the valid portion of the redacted warrant, the intrusion into personal privacy has been justified by probable cause to believe that the search and seizure will serve society's need for law enforcement. Second, because it is a duly issued warrant that is being redacted, the objective of interposing a magistrate between law enforcement officials and the citizen has been attained. Third, even though it may not be coterminous with the underlying probable cause showing, the scope of a search pursuant to a particularized, overbroad warrant is nevertheless limited by the terms of its authorization. In the case of a warrant containing some invalid general clauses, redacting neither exacerbates nor ratifies the unwarranted intrusions conducted pursuant to the general clauses, but merely preserves the evidence seized pursuant to those clauses particularly describing items to be seized. Fourth, as to the valid portions of the warrant salvaged by redaction, the individual whose property is to be searched has received notification of the lawful authority of the executing officer, his need to search, and the limits of his power to search. Fifth, redaction does not affect the generation of a record susceptible to subsequent judicial review." 687 F.2d at 758.

The court in *Christine* also pointed out that severance of a partially invalid warrant is analogous to courts' treatment of evidence seized in a search which exceeds what is authorized by the warrant. In the case of a partially defective warrant, as in the case of an excessive or overreaching search, only that evidence seized without valid authorization supported by particularized probable cause need be suppressed. "The cost of suppressing *all* the evidence seized, including that seized pursuant to the valid portions of the warrant, is so great that the lesser benefits accruing to the interests served by the Fourth Amendment cannot justify complete suppression." 687 F.2d at 758.

Finally, one of the leading commentators on fourth amendment search and seizure has endorsed the severability doctrine stating: "[I]t would be harsh medicine indeed if a warrant which was issued on probable cause and which did particularly describe certain items were to be invalidated in toto merely because the affiant and magistrate erred in seeking and permitting a search for other items as well." 2 W. LaFave, *Search and Seizure* sec. 4.6(f) (1978).

The central problem in fourth amendment search and seizure jurisprudence is to strike the proper balance between the government's obligation to enforce its laws to protect its citizens from wrongdoers and the citizen's right to be secure in his person, house, papers and effects from unreasonable government intrusion. We conclude that in cases involving search warrants which are partially but not wholly defective, those two interests are best accommodated by admitting those items seized pursuant to the valid parts of the warrant and suppressing those items seized under the invalid portion. Insofar as the searcher exceeds the scope of the validly authorized search, items so seized must be suppressed.

However, as to those items discovered in the lawful execution of the valid part of the warrant, the Fourth Amendment does not require suppression.

The second question is whether application of the severability doctrine is proper in this case. The defendant argues that it is not for two reasons. First, it is argued that the warrant under consideration is "essentially" or "facially" general and therefore should be held invalid. Second, the defendant argues that the severability doctrine should not be used in cases such as this one where the trial court has made a finding of police misconduct.

A number of courts have recognized a potential for abuse of the severability doctrine if it is used to validate warrants that are essentially general in nature but as to some tangential items meet the requirement of particularity. The Supreme Court of California stated in *Aday*:

"We recognize the danger that warrants might be obtained which are essentially general in character but as to minor items meet the requirement of particularity, and that wholesale seizures might be made under them, in the expectation that the seizure would in any event be upheld as to the property specified. Such an abuse of the warrant procedure, of course, could not be tolerated." 55 Cal. 2d at 797, 362 P.2d at 52, 13 Cal. Rptr. at 420.

Similarly, the First Circuit Court of Appeals said in *United States v. Christine* that "[r]edaction is inappropriate when the valid portions of the warrant may not be meaningfully severable from the warrant as a whole." 687 F.2d at 754. The defendant also relies on the decision of the United States District Court for the District of New Jersey in *United States v. Giresi*, 488 F. Supp. 445 (D. N.J. 1980) aff'd. mem., 642 F.2d 444, (3rd Cir. 1981), cert. denied, 452 U.S. 939 (1981). There the court in reviewing recent decisions dealing

with the severability doctrine noted three district courts that had expressed their disagreement with severance based on a finding that the warrants under consideration were "dangerously akin to a general warrant." 488 F. Supp. at 460.

The doctrine of severability should not be allowed to become a means for defeating the particularity requirement. However, we perceive no such abuse of the doctrine in applying it to the facts of this case. The flawed portions of the warrant dealing with the glassware and phonograph albums can be easily severed without impairing the valid portion dealing with the antique book ends. Furthermore, this is not a situation where the warrant purports to authorize an indiscriminate rummaging through the defendant's personal effects. The only defect in the warrant's invalid provision is the failure to specify precisely the glassware and phonograph albums that were to be seized. The warrant under consideration in this case is less "dangerously akin to a general warrant" than the warrants held valid under the severability doctrine by other courts. For example, the only items sufficiently identified in the warrant considered in *Aday* were two books. The invalid portion consisted of "a number of broad, general categories, the last of which embraced 'any and all other records and paraphernalia' connected with the business of the corporate petitioner." 55 Cal. 2d at 795–796, 362 P.2d at 51, 13 Cal. Rptr. at 419. In this case the words "various long play phonograph record albums, and miscellaneous vases and glassware items, all of which were removed from the auction . . ." did not make this portion of the warrant a general warrant thereby seemingly giving officers the authority to "rummage around" all of defendant's personal property. The failure of this portion of the warrant is its lack of specificity in description,

"particularity," which the courts have come to require in interpreting the search and seizure amendment to the Constitution. The warrant here was not "dangerously akin to a general warrant" and is therefore distinguishable from the type of cases discussed in *United States v. Giresi*, 488 F. Supp. at 460 (1980). We conclude that the Fourth Amendment particularity requirement is not violated by applying the severability doctrine and recognizing the warrant as valid authority to seize the book ends.

The defendant also argues that the severability doctrine should not be applied in this case because of the trial court's determination of police misconduct. In its decision on the defense motions to suppress, the trial court said:

"The very ambiguities of the terms 'miscellaneous vases and glassware items' were used as rationale by the Taylor County officers to permit an indiscriminate search of numerous items. A look at the inventory makes it obvious that the Taylor County officers were not the least bit interested in solving potential thefts of items from the Webb auction, but rather wanted to inventory as many identifiable items as they could in an attempt to solve numerous other break-ins and burglaries."

The Taylor county officers who went along to execute the Chippewa county warrant obviously hoped that once they were legally on the premises they might find items stolen in other burglaries. There is nothing wrong with their subjective desire to see if they can recognize stolen goods. The real question is what did they do after they were lawfully inside the house in the execution of the Chippewa warrant. From this record the only things they could have seized were the book ends. However, the defendant handed over the other items to the officers. The trial court held the October 27th warrant in-

valid. We disagree. The other thing the record makes clear is that the officers were rightfully in the kitchen under the authority of that warrant. The next fact is that Deputy Sheriff Dassow recognized a General Electric twelve inch black and white television in the kitchen as matching the description of a television stolen from the Reinke home. This created a reasonable suspicion in the officer's mind that we conclude authorized such officers to more closely examine the television and to copy its serial number. (See discussion at *infra,* pp. 460–467 below). When it later developed that such television with that specific serial number was in fact one of the items the sheriff department's files showed had been stolen from the Reinke residence, that provided probable cause to obtain a search warrant listing that television and the other items stolen in the same burglary. Execution of that warrant provided a proper basis for the defendant's arrest, and therefore his subsequent confessions are not subject to suppression on the ground that the arrest was unlawful.

As to the items inventoried during the October 27th search which were not listed in the warrant, the record would appear to have given the officers no authority to inventory such items (except for the black and white television). However, the remedy is suppression of those items improperly inventoried. The state in its brief does not attempt to justify the "inventory" of 108 other items by the Taylor county deputies.

In support of its contention that the severability doctrine should not be applied under these facts the defendant quotes 2 W. LaFave, *Search and Seizure* sec. 4.6 (f) (1978), wherein it is stated:

"It has been correctly noted that the 'question of whether this kind of surgery might be performed might also depend to some extent upon the facts of each case, e.g., how was the warrant executed?' This is because

the items described in the warrant determine the permissible intensity and duration of the search. No problem is presented in cases like *Aday*, where the items which were seized are those for which probable cause existed and which were particularly described. But when other objects are seized under authority of the plain view doctrine (perhaps those objects insufficiently described in the warrant or those objects for which probable cause was not shown in the affidavit), a more careful inquiry into the circumstances is required. If the items were discovered before those to which the warrant was properly addressed were found and while the police were looking in places where the latter objects could be located, then it may be said that the discovery occurred while executing the lawful portion of the warrant. But if that were not the case, then these other items must be suppressed because found during execution of the invalid part of the warrant." (Footnotes omitted.)

This passage, rather than supporting the defendant's position, shows that the appropriate remedy in cases involving a search conducted under a partially valid warrant which exceeds the lawful scope is to admit those items discovered in the course of the execution of the lawful part of the warrant and to suppress the items that were not. The defendant also cites the decision of the Ninth Circuit Court of Appeals in *United States v. Rettig*, 589 F.2d 418 (9th Cir. 1978). In that case the court suppressed the entire fruits of the search because the searchers unreasonably exceeded the limitations of the warrant and searched for evidence not shown on the face of the warrant, and because "it was not possible for the court to identify after the fact the discrete items of evidence which would have been discovered had the agents kept their search within the bounds permitted by the warrant." 589 F.2d at 423. As a practical matter it simply was not possible to sort out what was seized legally and what was not. We are not faced with that problem.

We conclude that a rule requiring the suppression of all items seized in a search that exceeds what is legally authorized unduly hampers the government's efforts to gather evidence of crime and is not compelled by the purposes underlying the exclusionary rule. The exclusionary rule serves three principal purposes: (1) deterring police misconduct; (2) preventing the government from benefiting from its own wrong by using illegally seized evidence to convict; and (3) preventing the courts from becoming an accomplice in the violation of the Constitution. *United States v. Cook,* 657 F.2d at 734. All three purposes are fully vindicated by a rule admitting evidence seized in the course of the execution of the valid part of a partially invalid warrant and suppressing everything else. The courts have required no more in the analogous situation of a search under a wholly valid warrant that exceeds its bounds. *United States v. Mendoza,* 473 F.2d 692 (5th Cir. 1973) ; *United States v. Daniels,* 549 F.2d 665 (9th Cir. 1977) ; *United States v. Forsythe,* 560 F.2d 1127 (3rd Cir. 1977). We see no reason for a different rule in cases like this one involving the severability doctrine.

The final question is whether the recording of the serial number on the television set violated the defendant's constitutional rights. The defendant argues that even if the warrant authorized entry into the house to seize the book ends, the recordation of the television serial number was improper. The state concedes that there was no probable cause to seize the television under the plain view doctrine at the time of the search, but argues that simply inspecting the television and recording the serial number was not violative of the Fourth Amendment.

The cases which have considered the question of whether recording serial or identification numbers or other marks constitutes a search or seizure have reached

differing conclusions. In *United States v. Langley,* 466 F.2d 27 (6th Cir 1972), police responded to a report that a burglary was in progress. When they arrived at the scene, they found a rental truck parked in the driveway. One of the officers entered the back of the truck to find out if anyone was inside. Once inside the truck, the officer observed a number of packing cartons. The officer copied down the markings on the boxes and that information was later used in an affidavit to obtain a search warrant. The court held that copying down the identifying markings was outside the legitimate scope of the officer's investigation and therefore improper.

In *United States v. Gray,* 484 F.2d 352 (6th Cir. 1973), cert. denied, 414 U.S. 1158 (1974) officers were executing a warrant authorizing the seizure of illegally stored beer. In the course of the search, the officers discovered two rifles in an upstairs clothes closet. The officer removed the rifles and copied down the serial numbers. The numbers were run through the computers of the National Crime Information Center which showed that the guns were stolen. The court held that removing the rifles from the closet and recording the serial numbers was a search for which there was no probable cause.

Similarly in *United States v. Clark,* 531 F.2d 928 (8th Cir. 1976), the Eighth Circuit Court of Appeals held that officers authorized to search for drugs could not seize a pistol, check the serial number and prosecute the defendant for firearms violations. *See also, United States v. Sokolow,* 450 F.2d 324 (5th Cir. 1971).

A different conclusion was reached in the case of *United States v. Gunn,* 428 F.2d 1057 (5th Cir. 1970). That case involved a conviction for mail fraud through the fraudulent use of credit cards. The defendant sought to suppress evidence of serial numbers taken from car tires without a search warrant. The numbers on the

tires matched the numbers on one of the credit card invoices. In order for the investigator to observe the numbers on three of the four tires, it was necessary to crawl underneath the car and inspect the side of the tire facing inward. The court held that inspecting the tires for the purpose of obtaining serial numbers was not a search stating:

"We dispose quickly of Gunn's search-and-seizure argument regarding the serial numbers of the tires. The inspection of tires on a motor vehicle, performed by police officers entitled to be on the property where the vehicle was located, which in no way damaged the tires or the vehicle and was limited to determining the serial numbers of the tires was not a search within the Fourth Amendment. Alternatively, if the inspection is deemed to have constituted a Fourth Amendment 'search,' a search warrant was not necessary because the inspection was reasonable and did not violate Gunn's right to be secure in her person, house, papers, or effects." 428 F.2d at 1060.

*United States v. Catanzaro*, 282 F. Supp. 68 (S.D. N.Y. 1968) also involved an investigation of credit card fraud through the use of the United States mails. Law enforcement officers were in the defendant's apartment with his consent. While the defendant was voluntarily handing over certain items, one of the officers noticed a Springfield rifle on a wall rack. He recalled from his investigation that such a rifle had been repaired under a credit card. He checked the serial number on the rifle and discovered that it matched the one that had been repaired. The officer then seized the rifle as evidence. In upholding the seizure, the court stated:

"The inspector and his companions were lawfully present in the defendant's apartment pursuant to the express invitation of the defendant. Discovery of the rifle required no search and no intrusion into defendant's privacy beyond that to which he had expressly consented.

The inspector was not precluded from observing what was clearly and plainly to be seen. Having seen the rifle, the inspector properly scrutinized it more carefully, thereby confirming his suspicions that it was part of the fruit of the alleged crime. That he was required to examine it more closely to identify the serial number did not transform a mere observation into an unconstitutional search. '. . . mere observation [does not] constitute a "search." If an officer sees the fruits of crime —or what he has good reason to believe to be the fruits of crime—lying freely exposed on a suspect's property, he is not required to look the other way, or disregard the evidence his senses bring him.' " 428 F. Supp. at 69–70. (Footnote omitted.)

In *State v. Glover,* 60 Ohio App. 2d 283, 396 N.E.2d 1064 (1978) police investigating the theft of a green suede coat were given permission by the defendant to "look around all you want." In the course of the search, the officers observed drugs and drug paraphernalia. Inside a closet where the coat was eventually found, they saw and copied down the serial number of a Pentax camera. It was later determined that the camera was stolen. In upholding the subsequent seizure of the camera, the Ohio Court of Appeals stated:

"The record before us supports the state's contention that the officers were lawfully in the place where they observed certain contraband in plain view. The nature of the contraband as such must have surely suggested to prudent police officers the probability that the existence of scales, measuring devices, straining spoons, etc., were not the instruments used by a consumer of the hallucinogen or drug but were rather the tools of one engaged in trafficking in this illicit contraband. The officer's view in the closet was permitted by the appellant and the copying down of the camera's serial number on the shelf in the closet was, in our opinion, good police practice. It is well known that one who traffics in illicit drugs is often the recipient of stolen goods by the barter system." 60 Ohio App. 2d at 287, 396 N.E.2d at 1067–1068.

It is apparent that the common denominator in all of the cases in which the recording of identifying marks or numbers was deemed appropriate is the existence of a reasonable suspicion in the mind of the searching officer, not rising to the level of probable cause, that the inspected items were connected with criminal activity. In each case in which recording of identifying marks was upheld, the law enforcement officer was able to point to facts known to him prior to recording and checking the numbers which aroused an objectively based, articulable suspicion that the item under inspection was connected with a crime. By contrast, in those cases disapproving recordation of serial numbers, officials conducting the search could point to no such facts.

A number of courts have explicitly held that a reasonable suspicion which does not amount to probable cause will justify an inspection which includes noting the item's serial number. In *State v. Proctor*, 12 Wash. App. 274, 529 P.2d 472 (1974), a police officer responded to an alarm sounding in a real estate office owned by the defendant. When the officer arrived, he found no one inside but did observe a great deal of office equipment and other items, including an outboard motor, two movie projectors and six radios. The officer had previously been told by an informant that the defendant was engaged in selling and storing stolen property. He therefore copied down the serial numbers of three calculators. A subsequent check with police records revealed that the calculators were stolen. In upholding the action, the court said:

"[I]n police work, circumstances sometimes develop in which an intermediate response is appropriate. If a police officer has a 'well-founded suspicion not amounting to probable cause,' that a person has, is, or is about to commit a crime, that person may be detained for investigatory purposes without an arrest. . . . The tem-

porary detention may continue while the officer questions other persons present or radios police headquarters to check the information gained. . . . A noting of the serial numbers on the calculators was such an intermediate response." 12 Wash. App. at 277, 529 P.2d at 474. (Citations omitted.)

Similarly, in *State v. Torand*, 633 P.2d 1061 (Colo. 1981), the Supreme Court of Colorado said in regard to items discovered in the course of a limited consent search. "A reasonable suspicion short of probable cause will justify the superficial scrutiny of an object seen in plain view during the course of a valid search of a defendant's premises. . . ." 633 P.2d at 1062–1063. *See also, State v. Sagner*, 12 Or. App. 459, 506 P.2d 510 (1973); *State v. Streitz*, 258 N.W.2d 768 (Minn 1977).

Finally, Professor LaFave states his views on this area of the law as follows:

"It is generally assumed that there is nothing improper in merely picking up an unnamed article for the purpose of noting its brand name or serial number or other identifying characteristic to be found on the surface.
" . . .
"[I]t does not necessarily follow that officers executing a search warrant have carte blanche authority to subject to close examination each and every item of personalty which falls within their sight during the course of the search for the described items. The cases cited earlier concerning the checking of external serial numbers do not support such a broad proposition, for in each instance there were some facts (albeit facts falling short of probable cause) suggesting that the object in question was stolen property. . . . Although the proposition is not expressly stated in those decisions, the cases might be explained in this way: even 'mere inspection' of items seen but not named in the warrant must be reasonable, and for such a minimal intrusion to be reasonable the officers must first be aware of some facts and circumstances which justify a reasonable suspicion (not probable cause) that the items are the fruits, instru-

mentalities, or evidence of crime." 2 W. LaFave, *Search and Seizure* sec. 4.11 (1978) (Footnotes omitted.)

We conclude that the inspection of the television set for the purpose of copying down the serial number was not unreasonable under the facts of this case. The television was apparent to the police officers as soon as they entered the kitchen. Their presence in the kitchen was authorized by the valid portion of the warrant permitting the search for the antique book ends. Deputy Dassow had a reasonable suspicion that the television was stolen based on his recollection that a similar set had been taken in the Reinke burglary. It is true that twelve inch, black and white, General Electric television sets are sufficiently common to preclude a finding that there was probable cause to believe the set was stolen. However, the combination of factors—the same type of television, a recent burglary from a home about one and one-half miles away, and a reasonable belief that there was stolen property on the premises—was sufficient to arouse a reasonable suspicion in the mind of Deputy Dassow. The fact that such televisions are common only shows the need for obtaining the serial number.

Finally, the fact that the serial number was not recorded until some time after the television was first seen does not render the action unlawful.

The defendant is correct in his assertion that the search necessarily ended when the antique book ends were recovered. *State v. Starke,* 81 Wis. 2d at 414. The search could not proceed after the valid portion of the warrant had been executed which is one of the reasons why the long list of items discovered in other rooms of the house and the outbuildings could not be admitted. However, the television was observed while the officers

were still in the kitchen. The only event involving the television that occurred after the execution of the warrant was the recording of the serial number. If the police officers had the authority to inspect the television at the time they first saw it, the fact that they did not do so immediately does not make the subsequent action unlawful. In *United States v. Edwards,* 415 U.S. 800 (1974), the United States Supreme Court considered the question of whether the fourth amendment requires exclusion from evidence of clothing taken from the defendant approximately ten hours after his lawful arrest. The Court stated:

"This was no more than taking from respondent the effects in his immediate possession that constituted evidence of crime. This was and is a normal incident of a custodial arrest, and reasonable delay in effectuating it does not change the fact that Edwards was no more imposed upon than he could have been at the time and place of the arrest or immediately upon arrival at the place of detention. The police did no more on June 1 than they were entitled to do incident to the usual custodial arrest and incarceration." 415 U.S. at 805.

This court was faced with a situation in which there was a delay between the first observation of an object and its seizure in *State v. Mazur,* 90 Wis. 2d 293, 280 N.W.2d 194 (1979). The defendant in that case was charged with the burglary of the service station where he was employed. In connection with the investigation of that burglary, a police officer had requested and received permission to search the defendant's car while it was parked at the station. That search took place at approximately 7:00 a.m. In the course of the search, the officer discovered a chisel in a tool box in the trunk of the car. He did not remove the chisel from the car at that time.

Later that same day, after the officer had examined marks on the safe that had been broken into, he became suspicious that the marks on the safe may have been caused by the chisel found in the defendant's trunk. The officer then returned to the vehicle, which by that time had been moved to the residence of the defendant's female companion, and seized the chisel. In upholding the seizure, the court said:

"Most certainly the officer had probable cause to believe the chisel was used in the burglary and that it was in the trunk of the car—he had seen it there in the morning. In a sense it was not a search at all but only a seizure of an item the previous search revealed. It was not a prying into concealed areas in such a manner so as to be an unwarranted and unreasonable invasion of privacy. The seizure of the chisel was not so removed from the consent given in the morning either as to time or place to be constitutionally offensive." 90 Wis. 2d at 303–304. (Footnote omitted.)

Finally, in *United States v. White,* 617 F.2d 1131 (5th Cir. 1980), the Fifth Circuit Court of Appeals considered the question of whether a two day delay between the time consent was given to conduct a search and the time when the search actually took place rendered the search illegal. The court held that neither the delay nor the fact that the search was conducted by officers other than those named on the consent form invalidated the consent. "There is no indication that defendant attempted to withdraw his consent prior to the search or that he was in any way prejudiced by the delay or the search by other agents." 617 F.2d at 1134.

We conclude that the same considerations are applicable in this case. The initial observation was lawful. The delay in recording the serial number in no way prejudiced the defendant. The fourth amendment was

not violated by failing to inspect the television at the earliest opportunity.

*By the Court.*—The decision of the court of appeals is affirmed.

SHIRLEY S. ABRAHAMSON, J. (dissenting). Although I favor the severability rule because it is consistent with the particularity requirement of the fourth amendment and the purposes of the exclusionary rule, I conclude that the application of the severability rule in combination with the plain view rule is inappropriate in this case. I would affirm the circuit court's suppression order.

The majority reverses the suppression order holding (1) that the plain view doctrine is applicable to a severable warrant when the evidence is discovered by an officer who is not actually searching for objects within the purpose for which the search was initiated; and (2) that Deputy Dassow articulated "the existence of a reasonable suspicion" that the GE television set was "connected with criminal activity," *supra,* p. 464. I dissent.

I.

Although the majority never labels its justification for the recording of the serial number a plain view analysis, it is applying that analysis in this case. The majority says that the warrant can be severed and rendered valid in order for the majority to conclude that "the officers were rightfully in the kitchen under the authority of that warrant." *Supra,* p. 458. *See also supra,* p. 466. According to the majority, once the police intrusion and presence in the kitchen are lawful, the plain view doctrine comes into play to allow inspection of the GE television set.

Under the plain view doctrine, it is permissible for police officers who have a right to be in the place where they are when they observe an item to seize the item although it is not set forth in a warrant if it is in plain view and they have probable cause to believe the item is a fruit, instrumentality, or evidence of a crime. *Bies v. State,* 76 Wis. 2d 457, 251 N.W.2d 461 (1977); 2 LaFave, *Search and Seizure* secs. 4.6(f), p. 112, 4.11(c) (1978).

By allowing the recording of the serial number of the television set, the majority is adopting an adaptation of the plain view doctrine to allow inspection—but not seizure—of an item in plain view when the officers do not have probable cause but have a reasonable suspicion based on prior knowledge to believe that the item is a fruit, instrumentality, or evidence of a crime. 2 LaFave, *Search and Seizure* sec. 4.11(c) (1978). *Supra,* pp. 460–467.

This adaptation of the plain view doctrine should be subject to the same restrictions as the traditional plain view doctrine. This court has set forth four requirements for the application of the plain view doctrine:

" '(1) the evidence is discovered in the course of a lawful search, whether initiated by a valid search warrant, a valid arrest warrant, circumstances justifying a lawful warrantless search, or circumstances justifying a lawful warrantless arrest;

"(2) the evidence in itself or in itself with facts known to the officer prior to the search, but without the necessity of subsequent development of additional facts, provides a connection between the evidence and criminal activity;

"(3) the evidence is discovered in the physical area properly searchable within the purposes for which the search was initiated, and

"(4) the evidence is discovered while the officer is actually searching for objects within the purpose for

which the search was initiated.' " *Myers v. State*, 60 Wis. 2d 248, 261, 208 N.W.2d 311 (1973), quoting *United States v. McDonnell*, 315 F. Supp. 152, 168 (D.C. Neb. 1970). *See also State v. Wedgeworth*, 100 Wis. 2d 514, 535, 302 N.W.2d 310 (1981), *Bies v. State*, 76 Wis. 2d 457, 464, n. 3, 251 N.W.2d 461 (1977).

Assuming *arguendo* that the plain view doctrine should be applied to cases in which warrants are severed,[1] I conclude the fourth requirement of the plain view doctrine set forth above is not met in this case; that is, the evidence must be discovered while the officer is actually

---

[1] Only one case cited by the majority applies the plain view doctrine to a severable warrant. In *State v. Sagner*, 12 Or. App. 459, 506 P.2d 510 (1973), the court held that the warrant was severable and that evidence regarding a television set seized in plain view pursuant to probable cause was admissible because it was seized in the course of the search for the items listed in the valid portion of the severable warrant. The Oregon court reluctantly adhered to the trial court's finding as to the timing of the discovery of the television set, noting that ". . . the record is somewhat confused on that point." *Id.* at 472.

The problem of engrafting the plain view doctrine onto the severability rule is the difficulty of applying the doctrine to the facts of particular cases. Under the plain view doctrine the officer must be lawfully present when the object in plain view is seized. Where the search warrant must be severed because it is partially valid and partially invalid, the officer's presence in the home is valid when executing the valid portion of the warrant and invalid when executing the invalid portion of the warrant. Applying the plain view doctrine to an item seized or inspected in a search pursuant to a severable warrant imposes on the trial court the difficult task of determining whether the object in plain view was seized or inspected during the execution of the valid or the invalid portion of the warrant.

In *United States v. Apker*, 705 F.2d 293, 307–308 (8th Cir. 1983), the Eighth Circuit Court of Appeals adopted the severability rule but expressly refused to combine it with the plain view doctrine because the court was concerned about resulting difficult factual determinations. The *Apker* court stated that "this expansion of the severance rule . . . could lead to what in effect would be a general warrant." *Id.* at 308.

searching for objects within the purpose for which the search was initiated. This requirement, which prevents abuses of the plain view doctrine, was not met in this case. Taylor County Deputy Dassow, who saw the television set and recorded its serial number, was not actually searching for any items in the warrant. He was engaged at all times in making an inventory of 109 items, none of which was related to the items listed in the warrant, in the defendant's home (from basement to attic) and in outlying buildings.

The circuit court, in its thoughtful written decision, expressly found that at all relevant times Deputy Dassow was not actually looking for the items listed in the warrant and that he was engaging in a general search. The circuit court found as follows:

"I find that the testimony of Deputy Dassow to be a frank admission that he considered the Chippewa County search warrant as his legal entry to the Noll residence to make a search for whatever leads he could find relating to other thefts or burglaries. Deputy Dassow, in effect, testified that he had as much time to look for other evidence of thefts as the Chippewa County officer would give him. Dassow felt that once Deputy Glass called out to the other officers, that the items on the Chippewa County warrant had been located, then and only then did the Taylor County officers have to terminate their search. . . . [T]he Taylor County officers were not the least bit interested in solving the potential theft of items from the Webb auction, but rather wanted to inventory as many identifiable items as they could in an attempt to solve numerous other break-ins and burglaries."

The majority did not and cannot hold this finding clearly erroneous, sec. 805.17(2), Stats. 1981–82. The majority ignores the import of the finding by saying that since the warrant authorized officers to be in the kitchen the "subjective desire" of the Taylor county officers is irrelevant. *Supra*, p. 457.

By focusing on the warrant's justification for the Taylor county officers' being in the kitchen, and thus dismissing as irrelevant their subjective intent, the majority avoids the determinative question of whether the Taylor county officers were actually searching for objects listed in the warrant.

Our cases have consistently held that in order for evidence seized under the plain view doctrine to be admissible, the officers must actually be looking for objects within the purpose for which the search was initiated when the object in plain view is discovered. And according to our cases, determination of this "actual search" requirement may involve an inquiry into the subjective motivation, intent, or desires of the officers as well as the legal justification for the officer's presence or a seizure. *Bies v. State,* 76 Wis. 2d 457, 251 N.W.2d 461 (1977).

The question of what effect, if any, the subjective motivation of any officer should have in excluding evidence is a difficult one and the subject of ongoing discussion and debate by courts and commentators.[2] I agree that subjective motivation, intent, or desire, when coupled with valid legal justification for the officer's presence or a seizure, may be irrelevant in certain cases in determining the admissibility of evidence. The majority's cursory dismissal of the officers' "subjective desire" in this case is inadequate treatment of this complex issue and our prior case law.

The record is clear in this case that Chippewa County Officer Glass was present to execute the warrant; any desire he might have had to find stolen goods not listed in the warrant probably would be irrelevant if he had seen the goods while he was actually searching for the

[2] Compare, *e.g.,* 1 LaFave, *Search and Seizure* sec. 1.2(g) (1983 Supp.); 2 LaFave, *Search and Seizure* sec. 4.11(e) (1978); Burkoff, *Bad Faith Searches,* 57 N.Y.U. L. Rev. 70 (1982).

items listed in the warrant. In contrast the Taylor county officers, as demonstrated by both their "subjective desires" *and* their behavior, were not present to execute the warrant. The Taylor county officers never actually searched for the items listed in the warrant. They were making an inventory of goods that might have been stolen. Their search was independent of the lawful one conducted by Officer Glass under the severable warrant. What we have in this case is really two searches—one by Officer Glass and the other by the Taylor county officers.[3] Analyzing the case in this way, I conclude that the search by the Taylor County officers was without the benefit of a warrant and was without probable cause thereby violating article I, section 11, of the Wisconsin Constitution.

## II.

Even if I were to agree with the majority that Deputy Dassow was engaged in a lawful search and within the protection of the plain view doctrine, I would affirm the circuit court's suppression order on the ground that the second requirement of the plain view doctrine was not met. The majority permits an officer to inspect and record serial numbers of items found in plain view if the officer at the time of the search has an "objectively based, articulable suspicion" that the item "was connected with the crime." *Supra,* p. 464. The majority

[3] Unfortunately it is not clear from the record whether it was the practice of the Taylor county officers to accompany officers from another county who have a search warrant to be executed in Taylor county. If it were not, the departure from the accepted way of handling such cases may be considered in determining whether the officer's conduct was arbitrary and violative of the constitution. 1 LaFave, *Search and Seizure* sec. 1.2(g), p. 26 (1983 Pocket Part) ; Amsterdam, *Perspectives on the Fourth Amendment,* 58 Minn. L. Rev. 349, 417 (1974).

concludes that this minimal intrusion does not violate the constitutional guarantee against unreasonable searches and seizures.

The majority finds that Deputy Dassow had a reasonable suspicion at the time he first saw the GE television set that it was the one stolen from the Reinke burglary. The majority acknowledges that the wisdom of hindsight plays no role in the test for reasonable suspicion. *Supra,* p. 466.

The majority quotes Deputy Dassow's testimony at *Supra,* p. 447, as if it demonstrated a clear objective suspicion based on knowledge prior to the search. In fact, the testimony is ambiguous. The deputy does not expressly state that prior to his entry into the home he knew that a GE television set had been taken from the Reinke home. The inference from other testimony in the record was that the Taylor county officers knew there had been burglaries in the county and in neighboring counties but that the officers were not familiar with the objects stolen. After the officers left the defendant's home, the 109-item inventory was compared with burglary complaints to discover the stolen items.

The interpretation of Deputy Dassow's testimony and the deputy's credibility were questions for the circuit court, sec. 805.17 (2), Stats. 1981–82, and the circuit court specifically found that when Deputy Dassow entered the home he did not know what objects had been stolen from neighboring homes. The circuit court expressly found that it was not until after the inventory was made and compared with the complaints that Deputy Dassow knew what items inventoried had been stolen. The circuit court's clearly stated finding is as follows:

"Furthermore, the second criteria which would permit an officer to seize any property which is evidence of a

crime,[4] whether or not different from the crime by which the search was prompted, is that the evidence itself (or with facts known to the officer *prior* to the search) (emphasis in original) must provide a connection between the evidence and criminal activity. According to the record, Dassow had a number of unsolved burglaries in Taylor County and was aware of similar breakins in adjoining counties, *but it is fairly clear that as he conducted the inventory he had no prior knowledge of what items had been stolen in the other burglaries.* He simply made a list of as many easily-tracable items as he could find and then *subsequently* (emphasis in original) went through open burglary files in an attempt to match the inventory to the file information."

This court is bound by the circuit court's finding of fact unless it is clearly erroneous. The majority did not—and cannot—hold that the circuit court's finding is clearly erroneous. After adopting the reasonable suspicion test, *supra,* pp. 464–466, the majority, contrary to the circuit court's finding of facts, concludes that when he saw the television set "Deputy Dassow had a reasonable suspicion that the television was stolen based on his recollection that a similar set had been taken in the Reinke burglary." *Supra,* p. 466. There is no basis in fact for this conclusion; indeed, it is contrary to the trial court's finding of facts.

Relying on the findings of the circuit court, I conclude that when he saw the television set Deputy Dassow did not have an "objectively based, articulable suspicion" that the television set "was connected with the crime." Therefore, the television set cannot be the basis of the subsequent search warrant.

The ultimate standard under the constitution is the reasonableness of the search or seizure in light of the facts and circumstances of the case. Because I conclude this standard was not met in this case, I would affirm

---

[4] This second criterion referred to in the circuit court's finding is the second factor set forth in the *Myers* case, quoted at p. 470.

the circuit court's order suppressing the evidence. I am authorized to state that JUSTICE WILLIAM BABLITCH joins in this dissent.